## In re FRETTER, INC., et al., Debtors.

### Bankruptcy No. 96–15177.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 24, 1998.

Dean Wyman, Cleveland, OH, for Office of United States Trustee.

Alan Lepene, Thompson Hine & Flory L.L.P., Cleveland, OH, for Strobl & Borda, P.C.

## MEMORANDUM OF DECISION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Fretter, Inc. and related entities filed petitions under Chapter 11 of the Bankruptcy Code on September 24, 1996.[1] These cases are now before the Court on the Application of Strobl & Borda, P.C. ("Strobl & Borda" or the "Firm") for Interim Compensation and the Objection of the United States Trustee to it. Strobl & Borda requests compensation in the amount of $372,514.05 and expense reimbursement in the amount of $15,390.52 for work done as special counsel from September 24, 1996 through July 31, 1997. The United States Trustee asks that all compensation be denied because Strobl & Borda's appointment was invalid. For the reasons set forth below, the Objection will be sustained in part and denied in part.

## JURISDICTION

Jurisdiction to hear and determine this matter exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16,

---

1. These cases are being jointly administered. The pre-petition entities are referred to collectively as "Fretter" and the post-petition·entities are referred to collectively as "Debtors."

1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## FACTS [2]

### Introduction

This dispute centers around two mortgages given by Fretter to Strobl & Borda pre-petition. One mortgage, which was disclosed in connection with the Firm's Application to be Employed as Special Counsel, was to be promptly released but was not. The other mortgage was not disclosed or released until several months into the cases. The issue is what consequences, if any, should attach to these failures and omissions.

### The Mortgages

Strobl & Borda represented Fretter in the five to six months before the cases were filed. While the Firm was paid for some of its work, $77,974.79 remained unpaid in the week before the filings. The Firm negotiated with Fretter both for payment of the outstanding receivable and for some form of security with respect to Fretter's request that Strobl & Borda play a role in the cases post-filing. As a result, and immediately before the bankruptcy filings, Fretter gave Strobl & Borda these two mortgages on real property located in Brighton, Michigan (the "Brighton Property"):

| Date | Amount | Purpose |
| --- | --- | --- |
| September 23, 1996 | $100,000 | To secure payment of the outstanding pre-petition fees. |
| September 24, 1996 | $ 75,000 | To secure payment for services to be rendered in the Chapter 11 cases. |

**2.** The Application for Interim Compensation drew objections from the United States Trustee, the Debtors, and the Official Committee of Unsecured Creditors. The latter two parties focused their objections on the amount of the Firm's fees. The Court held an evidentiary hearing on this Application, at which time Thomas Strobl, Gary Cunningham, and Timothy Fusco (members of Strobl & Borda), and James Rocchio (a former member of the Firm) testified. Additionally, Timothy Pohl and Sean Malloy, attorneys with Jones, Day, Reavis & Pogue (general Chapter 11 counsel for the Debtors) and Mike McClean (president of Fretter) testified. At the Court's request, the parties filed post-trial briefs in sup-

### The Application to Employ Strobl & Borda (the "Application") and Order Authorizing the Employment (the "Order")

On October 18, 1996, the Debtors applied to employ Strobl & Borda as special counsel with respect to certain real estate matters and commercial litigation. The Application disclosed: (1) the Firm's pre-petition claim for legal services in the amount of $75,-602.47; [3] and (2) the September 24, 1996 mortgage for post-petition services. James Rocchio, then a member of the Firm, submitted an affidavit in support of the Application "in accordance with section 327 of Title 11 of the United States Code ... and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure" in which he made the same disclosures. He also disclosed the Firm's prior representation of various creditors involved in the cases and affirmed that:

> [Strobl & Borda] does not hold or represent any interest adverse to the Debtors or their estates with respect to the matters for which the Debtors propose to retain it. If I discover any information that is contrary to or in addition to the statements made in this affidavit, I will disclose such information to the Court promptly.

The Application and affidavit do not disclose the existence of the September 23, 1996 mortgage.

A hearing was held on the Application. At that time, the Debtors' general Chapter 11 counsel stated that Strobl & Borda had agreed to release the September 24, 1996 mortgage as part of its retention. The Order authorizing the Firm's retention states that the authorization "is subject to the termination of the [September 24, 1996] mortgage."

port of their positions. (Docket 675, 739, 751, 754, 758). As is discussed more fully below, at the close of the briefing, only the United States Trustee's Objection remained.

**3.** The Firm was actually owed $77,974.79 according to the later-filed Affidavit of Thomas Strobl in Support of the Application. (Docket 637). This is also the amount reflected in the Firm's proof of claim. (Joint Exh. 14). The inconsistency between the actual amount of the pre-petition fees and the higher amount of the September 23, 1996 mortgage was not explained.

## Sale of the Brighton Property

In June 1997, the Debtors sold the Brighton Property as part of the orderly liquidation of their assets in these cases. Strobl & Borda represented the Debtors in closing the sale. In the course of the closing, these facts came to light: (1) Strobl & Borda had not discharged the September 24, 1996 mortgage; and (2) Strobl & Borda also held the second mortgage dated September 23, 1996.

The existence and the discharge of the two mortgages became an issue because the sale could not close without transferring clear title to the real estate. To clear the title, the mortgages had to be released. The Debtors believed both mortgages should have been discharged, without any funds being reserved for the Firm's benefit. Strobl & Borda took the position that it was entitled to the benefit of the September 24, 1996 mortgage, for reasons explained below. While the Firm did not believe the September 23, 1996 mortgage had any continuing validity, it did not voluntarily release it. Instead, the Firm negotiated with the Debtors the terms under which it would discharge both of these mortgages. The Firm itself characterized these negotiations as "intense".

To break the impasse, the parties agreed to discharge the mortgages, complete the sale, and place $100,000 of the proceeds in escrow. In correspondence from the Firm to the title officer handling the closing, the Firm then insisted that the $100,000 be deposited into its client trust account as a condition to the discharge of the mortgages. The attorney handing the closing indicated that, without the requested deposit, the Firm intended to withhold its permission to record the discharge of its mortgages or to distribute "any proceeds from the sale." He soon withdrew that position and the $100,000 was deposited into a non-interest bearing escrow account with the title company, where it remained for several months.

## Failure to disclose or discharge the September 23, 1996 mortgage

As noted, the Firm did not disclose the September 23, 1996 mortgage in the Application and affidavit in support of its retention. The mortgage was, however, known to the Debtors' general bankruptcy counsel who prepared the Application and affidavit. That counsel did not include the mortgage in the disclosures because Strobl & Borda had agreed to release it shortly after it had been granted.[4] Some members of the Firm mistakenly thought that the release had taken place. No one at Strobl & Borda, however, took responsibility for seeing that the mortgage was, in fact, discharged and so it remained a lien on the Brighton Property at the closing. This failure was negligent, rather than willful.

The Firm did not supplement its disclosures to the Court regarding the September 23, 1996 mortgage until December 1, 1997. At that time, apparently in anticipation of the evidentiary hearing on the Fee Application, Thomas Strobl, president of the Firm, submitted an affidavit in support of the Application which disclosed the mortgage.

## Failure to discharge the September 24, 1996 mortgage

At the beginning of the cases, Mr. Strobl delegated authority to handle the bankruptcy employment process to his partner, Mr. Fusco, an experienced bankruptcy attorney. Mr. Fusco agreed to release the September 24, 1996 mortgage as a condition of the Firm's employment, and the Order so provided. Mr. Fusco, however, negligently failed to follow through and do so.

Members of the Firm were advised by the Debtors' general Chapter 11 counsel in connection with the Brighton Property closing that the Order authorizing the Firm's employment required termination of this mortgage. Without reviewing the Order, Mr. Strobl continued to believe and assert that the Firm was entitled to this mortgage to secure its post-petition fees. Once the sale had closed and the escrow was established, the Firm was again contacted and asked to address this matter. It did not.

---

4. This agreement was independent of the later agreement to discharge the September 24, 1996 mortgage as a condition of employment.

The issue of the $100,000 escrow was brought to the Court's attention for the first time on October 9, 1997, at an unrelated status conference regarding Strobl & Borda's retention. The Court instructed the parties to review the situation. Although Mr. Strobl had multiple opportunities to read the Order from October 1996 forward, he maintains that he did not see it until this October 1997 review. His lack of knowledge regarding the agreement to terminate the mortgage resulted from a gross lack of communication within the Firm. On October 31, 1997, the Firm finally released the escrow to the Debtors.

### Scope of services performed

The Firm was retained as special counsel to perform services for the Debtors in connection with a large number of real estate and commercial litigation matters. While various entries in the Application appear to address matters outside the scope of its retention, the Firm explained these entries at the evidentiary hearing. For example, Strobl & Borda attended some meetings with the Official Committee of Unsecured Creditors and researched various general bankruptcy issues, but only did so in a limited fashion in connection with the areas of its retention, i.e., the real estate and litigation matters.

### The Application for Interim Compensation (the "Fee Application")

Strobl & Borda filed its Fee Application for interim compensation on September 16, 1997. The Fee Application, as modified by three related supplements, requests total compensation in the amount of $372,514.05 and expenses in the amount of $15,390.52. The third supplement to the Fee Application indicates that $109,740.50 of the total fees and $6,645.47 of the expense total are attributable to litigation services. It also indicates that $262,773.55 of the fee total and $8,745.05 of the expenses are attributable to real estate matters. The Fee Application as supplemented does not disclose that $100,000 was being held in escrow toward payment of these fees. This omission was, once again, the result of the Firm's negligence.

### Other Objections

The Debtors and the Official Committee of Unsecured Creditors (the "Committee") also filed Objections to Strobl & Borda's request for interim compensation. After the evidentiary hearing, the Debtors, the Committee, and Strobl & Borda entered into a Stipulation of Settlement (the "Stipulation"). Under the Stipulation: (1) the Debtors and the Committee withdrew their Objections; (2) Strobl & Borda reduced its fee request by $75,000; and (3) Strobl & Borda withdrew its pre-petition claim. Additionally, they stipulated that the Debtors would like Strobl & Borda to continue to represent them on certain real estate and litigation matters, and that the Committee did not object to that request.

### DISCUSSION

Section 327 of the Bankruptcy Code sets out the legal standards for the employment of professionals by a Chapter 11 debtor. Section 327(a) provides for the employment of general bankruptcy counsel to assist in carrying out a debtor's duties under the Bankruptcy Code. Section 327(e) permits a debtor to employ counsel for a special purpose. Reasonable compensation for actual, necessary services rendered and expenses incurred may be awarded to an attorney employed under § 327. 11 U.S.C. § 330(a)(1). In some instances, the compensation may be allowed and disbursed on an interim basis. 11 U.S.C. § 331. Strobl & Borda seeks such an interim award.

The United States Trustee objects to Strobl & Borda's request for interim fees on the ground that its appointment is invalid for three independent reasons:

1. The Firm did not disclose the existence of the September 21, 1996 mortgage in violation of the disclosure requirements of Federal Rule of Bankruptcy Procedure 2014.

2. At the time the Firm was retained, it held interests adverse to the Debtors and to the estates in the form of the two mortgages. Those interests rendered the Firm ineligible for appointment as special counsel under 11 U.S.C. § 327(e). Concomitant with this argument, the United States Trustee argues that Strobl & Borda

actually performed services of general bankruptcy counsel under 11 U.S.C. § 327(a), a role for which it was also ineligible.

3. The Order authorizing the Firm's retention was specifically subject to the termination of the September 24, 1996 mortgage. This mortgage was not discharged and the Firm did not relinquish its claim to the proceeds of sale until after it had performed the services for which it requests fees.

The United States Trustee asserts that the appropriate consequence of the invalid retention is the denial of all compensation.

Strobl & Borda acknowledges and apologizes for its failure to discharge the September 24, 1996 mortgage and its failure to disclose and discharge the September 23, 1996 mortgage. The Firm claims, however, that these failures were mistakes based on misunderstandings and miscommunication within the Firm. Additional arguments of the parties are set forth below.

## I. *Federal Rule of Bankruptcy Procedure 2014*

■ A Chapter 11 debtor's employment of professionals, including attorneys, requires bankruptcy court approval. 11 U.S.C. § 327.[5] "The bankruptcy court must ensure that attorneys who represent the debtor do so in the best interests of the bankruptcy estate." *Neben & Starrett Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 880 (9th Cir.1995), *cert. denied,* 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). A court cannot properly perform this statutory duty without full disclosure. To satisfy the court's need for information, the Bankruptcy Code and Rules impose various disclosure requirements on attorneys who seek to represent a debtor.[6] Complete and accurate disclosure by attorneys is required to permit the court to make informed decisions regarding their employment. "Absent the spontaneous, timely and complete disclosure required ... court appointed counsel

proceed at their own risk." *Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994).

■ Federal Rule of Bankruptcy Procedure 2014(a) requires disclosure "to the best of the applicant's knowledge, [of] all of the person's connections with the debtor ... The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor...." Under this Rule, a firm requesting employment has the "duty to disclose any and all connections ... Attorneys cannot pick and choose which connections to disclose, and negligence is no excuse." *In re National Liquidators, Inc.,* 182 B.R. 186, 196 (S.D.Ohio 1995).

■ ·"[T]he bankruptcy court is vested with the inherent power to sanction attorneys for breaches of fiduciary obligations." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 477 (6th Cir.1996). The failure to make complete disclosure under Bankruptcy Rule 2014 is sanctionable and sanctions may be appropriate regardless of actual harm to the estate.· *Downs; Accord Park–Helena Corp.* The bankruptcy court has a great deal of latitude in fashioning appropriate sanctions. *Downs.*

■ Courts have imposed a variety of sanctions based on a failure to make the required disclosures. The sanctions range from a denial of all fees, to a reduction of fees, to the imposition of economic sanctions. *Downs* (all compensation denied); *see also, Park–Helena Corp.* (all compensation denied);. *In re National Liquidators, Inc.,* 182 B.R. 186 (S.D.Ohio 1995) (denial of a portion of fees); *In re The Leslie Fay Cos.,* 175 B.R. 525 (Bankr.S.D.N.Y.1994) (economic sanctions); *In re Imperial Corp. of America,* 181 B.R. 501 (Bankr.S.D.Cal.1995) (economic sanctions and denial of a portion of fees). If, however, the failure to disclose results in a professional being employed to perform services for which it is not eligible for retention under 11 U.S.C. § 327, denial of all fees for those services is required. See *Michel v.*

---

5. Section 327 refers to a trustee. A debtor in possession has all the rights, functions, and duties of a trustee under 11 U.S.C. § 1107(a), with certain exceptions not applicable here.

6. 11 U.S.C. § 329 and Fed.R.Bankr.P.2014 and 2016.

*Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.),* 44 F.3d 1310 (6th Cir. 1995). See also *Hunter Savings Assoc. v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.),* 750 F.2d 536 (6th Cir.1984). Similarly, all compensation should·be denied to an attorney who willfully disregards his or her fiduciary obligations under the·disclosure rules. *Downs* at 479.·

Strobl & Borda had an affirmative duty under Rule 2014 to disclose all of its connections with the Debtors and it failed to do so. The United States Trustee represents that he would have objected to the Firm's employment if he had known about the September 23, 1996 mortgage. Since the retention process was flawed, the United States Trustee urges that the entire retention Order be found invalid and all fees denied. In reply, Strobl & Borda argues that the omission resulted from mistake and invalidation of its appointment would be a draconian sanction. The Firm suggests that its voluntary reduction in fees reflected in the Stipulation satisfactorily addresses and resolves the issue of sanctions based on its failure to disclose. Consideration of appropriate sanctions in this case, however, cannot be based solely on·the failure to disclose the September 23, 1996 mortgage. This is because the United States Trustee is arguing that the Firm's retention is invalid under 11 U.S.C. § 327 by virtue of both (1) the undisclosed mortgage; and (2) the failure to terminate the mortgage that *was* disclosed. The sanctions decision must, therefore, be made as part of the decision as to whether the Firm was validly retained under § 327.

## II. *11 U.S.C. § 327*

The United States Trustee takes the position that Strobl & Borda actually performed services of general bankruptcy counsel under 11 U.S.C. § 327(a), for which it was not retained. Additionally, he argues that Strobl & Borda was ineligible to be appointed as special counsel under 11 U.S.C. § 327(e) because it held interests adverse to the Debtors and the estates. The Firm denies that it went beyond the role of special counsel. It further denies holding an adverse interest under § 327(e) and argues that even if it did,

the appointment is valid because the Firm acted in good faith at all times and provided valuable professional services to the Debtors. Strobl & Borda argues that, at most, the mortgages warrant denial of compensation related to the Brighton Property.

### A. *Scope of the Services Rendered*

As an initial matter, the United States Trustee contends that the services performed by the Firm exceeded the scope of its retention as special counsel, that it actually performed the services of general bankruptcy counsel, and that such an overreaching justifies denying all compensation. The facts, however, do not substantiate this argument. A review of the Application and the evidence indicates that the services performed by the Firm were within the scope of its limited employment.

### B. *Adverse Interests*

We turn, then, to § 327(e) under which a debtor:

... with the court's approval, may employ, for a specified special purpose, ... an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not ... hold any interest adverse to the debtor or to the estate with respect to the matter on which such ·attorney is to be employed.

Of these statutory requirements, the only one at issue is whether Strobl & Borda held an interest adverse to the Debtors or the estates with respect to the matter on which it was employed.

The term "adverse interest" is not defined by the Bankruptcy Code. An oft-cited definition of "to hold an adverse interest" is:

... (1) to possess ... an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts,* 46 B.R. 815, 827 (Bankr. D.Utah 1985), *rev'd in part on other grounds,* 75 B.R. 402 (D.Utah 1987); *Roger J. Au & Son, Inc. v. Aetna Insurance Co. (In re*

*Roger J. Au & Son, Inc.),* 64 B.R. 600, 604 (N.D.Ohio 1986). A finding that a professional holds an adverse interest "is not dependent upon the presence of connivance or overreaching." *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987). There is no bright line rule regarding this basis for disqualification as "[t]his inquiry is of necessity case-specific." *Martin* at 182.

In many cases, including those cited by the parties, courts struggle with trying to anticipate whether a set of facts known in the abstract at the outset of a case amounts to an adverse interest. In the case at hand, however, the Court has the benefit of hindsight in making this determination. Looking at the events that transpired, it is clear that the mortgages were adverse interests.

 The mortgages were an economic interest held by the Firm that created both an actual dispute and a potential one with the Debtors and the estates. First, there was an actual dispute at the Brighton Property closing. The interests of the Debtors and the estates were to have the closing go smoothly with all net proceeds being paid over to the Debtors. Instead, while representing the Debtors in the transaction, the Firm argued with the Debtors regarding the validity of the mortgages and the disposition of the sale proceeds. The Firm insisted it was entitled to $100,000 worth of benefit from the mortgages, with the funds going into its client trust account. The Debtors disputed both the Firm's entitlement to any escrow and the notion that any such escrow should be with Strobl & Borda. The Firm threatened to withdraw the discharges and withhold consent to distribution of the proceeds of sale if the funds did not go into its client trust account. The Firm then permitted the closing to go forward with $100,000 of sales proceeds deposited into an escrow account with a third party. The dispute was not resolved until Strobl & Borda released the funds four months later. Second, the September 23, 1996 mortgage was security for pre-petition fees and could likely have been challenged as a preference, thus creating the potential for yet another dispute.

 The fact that this state of affairs resulted from the Firm's mistaken belief that it had released the one mortgage and was entitled to the benefit of the other mortgage, rather than from any malfeasance, does not change the conclusion that the mortgages were adverse interests. Strobl & Borda's belief resulted solely from its own negligence, as the facts could easily have been ascertained. Just as negligence does not excuse an attorney's failure to disclose under Rule 2014, neither can it excuse acting against the best interests of a debtor. The Firm's argument that it did not compromise the Debtors' interests vis-a-vis the Brighton Property buyer or the transaction as a whole is also unpersuasive. "A fiduciary ... may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one." *Woods v. National Bank & Trust Co. of Chicago,* 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

### C. Consequences of the Adverse Interest

Strobl & Borda, therefore, held an adverse interest with respect to a matter for which it was employed. Does this adverse interest require that the Firm's entire retention be declared invalid, or only some portion of it? The United States Trustee argues that, as the holder of an adverse interest, the Firm was ineligible for appointment as special counsel under 11 U.S.C. § 327(e), as a result of which the Firm's retention is entirely invalid. The Firm counters that its mortgages related solely to the Brighton Property and, therefore, under the plain language of § 327(e) the appointment as special counsel is invalidated only with respect to that part of its representation.

 The United States Trustee relies on *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.),* 44 F.3d 1310 (6th Cir.1995) for the proposition that the Firm's retention is invalid in its entirety. That position is, however, overly broad and does not apply the general principle of *Federated* to the less restrictive standard of § 327(e). In *Federated,* the Sixth Circuit held that a professional employed under 11

U.S.C. § 327(a) who failed to meet the statutory requirements for employment under that subsection could not be compensated under 11 U.S.C. § 330. Applying that holding to this case, the Firm may not be compensated to the extent it was ineligible to be employed as special counsel.[7] Insofar as the Firm was validly retained, however, compensation for its services under 11 U.S.C. § 330 is still appropriate. *In re Imperial Corp. of America,* 181 B.R. 501 (Bankr.S.D.Cal.1995). The question, therefore, is the extent to which the Firm was ineligible for employment as special counsel under 11 U.S.C. § 327(e).

◼ The starting point for any statutory analysis is the language of the statute itself. *Pa. Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). When the language of a statute is clear, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917), *quoted in United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Courts do not look beyond the plain meaning of a statute except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

◼ In analyzing this issue, it is important to remember that Congress has drawn a distinction between the appointing power of § 327(a) and § 327(e). To be eligible for appointment under 11 U.S.C. § 327(a), a professional must meet two tests: the professional must "not hold ... an interest adverse to the estate" and must be disinterested. Under the more flexible language of 11 U.S.C. § 327(e), a professional may be employed for a specific purpose so long as the professional does not hold an interest adverse to the debtor or the estate "with respect to the matter on which such attorney is to be employed." The plain language of the Code contemplates that a professional may be appointed as special counsel to perform services on one legal matter even if counsel holds an adverse interest on another matter. The fact that Strobl & Borda was ineligible to be special counsel on one matter does not, therefore, mean that its entire appointment should be vacated. "Statutes ... must be read in a 'straightforward' and 'commonsense' manner ... When we can discern a plain and unambiguous meaning from the language of a [statute], our task is at an end." *Rogers v. Laurain (In re Laurain),* 113 F.3d 595, 597 (6th Cir.1997). Because the United States Trustee does not argue that applying the plain meaning of § 327(e) would produce a result at odds with the drafters' intentions, there is no need to carry the analysis further.

◼ The appointment of Strobl & Borda is, therefore, invalid only to the extent of its adverse interest. As the adverse interest was the Brighton Property mortgages, the Firm was ineligible to be appointed to handle any matters relating to that property. Under the *Federated* decision, all compensation related to that matter is denied. The Firm has identified fees in the amount of $16,249.25 as directly related to the Brighton matter. The inquiry must, however, go one

---

7. Strobl & Borda cites *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831 (7th Cir.1998) for the proposition that the Court has discretion to allow all fees even under these circumstances. *In re Crivello* is not persuasive authority because it is directly contrary to the *Federated* decision, which is the law of this Circuit. Strobl & Borda also asks the Court to use its equitable powers to overlook the Firm's mistakes and to award all fees. An appeal to equity must be carefully analyzed to insure that the circumstances support the existence of equitable powers. Bankruptcy courts do not have equitable powers to authorize the employment of professionals who do not meet the statutory requirements for that employment. *Federated Dep't Stores, Inc.; Michel v. Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.),* 999 F.2d 969 (6th Cir.1993); *Childress v. Middleton Arms, L.P. (In re Middleton Arms Ltd. Partnership),* 934 F.2d 723 (6th Cir.1991). They do, however, have equitable powers to determine sanctions for violations of the disclosure rules related to employment. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472 (6th Cir.1996).

step further due to the manner in which the Firm recorded the time spent on this representation. The Fee Application divides the Firm's real estate services into two categories: (a) work on specific real estate transactions, identified by project name; and (b) general real estate services in the amount of $93,747.55 which are not linked in the Fee Application to a specific piece of real estate (the "General Real Estate Fees"). These latter services include various bulk sales proposals, developing files for real estate matters, preparing status reports regarding the Debtor's real estate, and the handling of telephone calls from brokers and other parties interested in purchasing real estate, some of which no doubt relate to the Brighton Property. Given that the Firm is not eligible to be compensated for any work related to that property, this category of the Fee Application will also be disallowed.

■ The decision to disallow the General Real Estate Fees is buttressed by the Firm's failure to disclose the September 23, 1996 mortgage. If the mortgage had been disclosed, the Court would not have approved the Firm's employment with respect to the Brighton Property or with respect to general real estate matters. That brings this discussion back to the question of sanctions for violating the disclosure rules. As noted above, courts have considerable discretion in determining such sanctions. The Court is mindful that "when it metes out a sanction, it must exercise such power with restraint and discretion . . . The sanction levied must thus be commensurate with the egregiousness of the conduct." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir.1996).

■ In considering the appropriate sanctions for Strobl & Borda's non-disclosure, the Court deems significant the Firm's casual attitude toward the disclosure requirements at the outset, its interference with the Brighton Property closing without making any effort to verify the facts, its failure to bring the matter to the Court's attention after the closing, the failure to disclose the $100,000 escrow in the Fee Application, and the

lengthy evidentiary hearing—with attendant legal fees—that was necessitated primarily by Strobl & Borda's actions with respect to the mortgages. Under these circumstances, even if disallowance of the General Real Estate Fees is not required by the *Federated* decision, it is an appropriate sanction for Strobl & Borda's failure to honor its disclosure obligations under Federal Rule of Bankruptcy Procedure 2014(a). The Court additionally finds as a sanction that the Firm's pre-petition claim will be denied.[8]

■ There are two remaining areas in which Strobl & Borda performed services for the Debtors: the sale of approximately 42 parcels of real estate other than the Brighton Property (for which the Firm seeks an award of $161,522.25) and commercial litigation (for which the Firm seeks an award of $116,-385.97). The United States Trustee has not identified any way in which the mortgages created a specific adverse interest with respect to either the non-Brighton Property real estate or the commercial litigation. Neither has the Court found such an adverse interest on independent consideration of the issue. As the Firm did not hold an adverse interest with respect to either of these areas, it was eligible to be appointed as special counsel on these matters and that appointment remains valid.

### III. *The Order of Employment*

■ The United States Trustee also asks that the Firm's retention be invalidated because it did not terminate the September 24, 1996 mortgage, a condition under the Order authorizing its employment. The Firm responds that the condition has now been met and also cites the Court's authority to enter a new or superseding order for its employment. While the United States Trustee's proposed invalidation has a certain logic, it is not an appropriate result based on the facts in this case. An Order was entered authorizing the Firm's employment. Although the Firm did not promptly terminate the mortgage, it has now been terminated. Additionally, the Court has already decided the ap-

---

8. This sanction is imposed regardless of whether the Firm, the Committee, and the Debtors stand by their Stipulation of Settlement. See Section IV, below.

propriate consequence of the Firm's failures with respect to both mortgages. Under this set of facts, an invalidation of the Firm's retention is not required.

### IV. *Allowance of Interim Compensation*

The Firm requests interim fees totaling $372,514.05. Section 331 of the Bankruptcy Code provides for the allowance of interim compensation "as is provided under section 330 of this title." 11 U.S.C. § 331. Section 330 permits an award to professionals employed under § 327. To receive compensation under § 330, the professional's appointment under § 327 must have been a valid one. *Federated Dep't Stores, Inc.* Based on the discussion above, fees in the amount of $16,249.25 related to the Brighton Property sale and fees in the amount of $93,747.55 related to general real estate matters are disallowed and are not properly awarded as interim compensation because they stem from work for which the Firm was not properly employed.

Strobl & Borda is eligible to receive fees and expenses for the balance of the real estate work and the commercial litigation services. The exact amount of fees to be awarded for these services must await one clarification from the parties. The Objections filed by the Debtors and the Committee raise numerous issues with respect to the Firm's Fee Application, and encompass both litigation and real estate matters. These Objections were resolved by a Stipulation which includes the Firm's agreement to reduce its fee request by $75,000 and waive its pre-petition fees. As that agreement was reached before this decision was issued, and as it addressed both the real estate and the litigation fee disputes, the Court has some question as to the continued vitality of the proposed fee reduction. While the Court will make an independent examination of the remaining fee request in any event, it will also give consideration to any proposed compromise with respect to these fees. The parties will, therefore, be given 10 days in which to file a statement clarifying their Stipulation in light of this decision. The Court will then address the remainder of the Strobl & Borda request for interim compensation.

### V. *Strobl & Borda's Continuing Status as Special Counsel*

The Fee Application is for services provided to the Debtor through July 31, 1997. The Firm has continued to represent the Debtors from that date to the present, and the parties wish the representation to continue. A status conference will be scheduled by separate order to address that issue.

### CONCLUSION

For the reasons stated, the Objection of the United States Trustee to the Application of Strobl & Borda, P.C. for Interim Compensation will be sustained in part and overruled in part.