In re INDEPENDENT ENGINEERING CO., INC.

Thomas Miller, Appellant,

v.

United States Trustee, Appellee.

BAP No. MB 97–098.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 26, 1999.

Harvey S. Shapiro and Collier, Shapiro & McCutcheon, Cambridge, MA, on brief for the appellant.

Gary L. Donohue, Office of the United States Trustee, on brief for the appellee.

Before GOODMAN, HAINES and CARLO, U.S. Bankruptcy Judges.

PER CURIAM.

The Debtor's original attorney, Thomas Miller, ("Miller"), appeals from an order of the bankruptcy court vacating a prior order approving Miller's application to be employed as Debtor's counsel. In addition to vacating its prior order, the bankruptcy court disqualified Miller from serving as Debtor's counsel and required Miller to disgorge all retainers and fees and return them to the Debtor. For the reasons set forth, we affirm.

## JURISDICTION

■ Miller was disqualified as counsel to the Debtor and ordered to disgorge all fees. The disgorgement order is an order that "conclusively determine[d] a separable dispute", *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir.1983). It resolves finally the discrete issue to which it is addressed, Miller's employment and compensation, and is therefore, properly before this Court on appeal. *In re Lewis*, 113 F.3d 1040, 1043 (9th Cir.1997) (disgorgement order subject to appellate review); *see e.g. In re W.J. Services, Inc.*, 139 B.R. 824, 826 (Bankr.S.D.Tex.1992) (interim fee award appealable where attorneys discharged from further representation).

## STANDARD OF REVIEW

■ This court applies the "clearly erroneous standard" of review to the facts. FED.R.BANKR.P. 8013. Applications of law are reviewed *de novo* and will only be set aside if they are made "in clear error or constitute an abuse of discretion." *In re DN Associates*, 3 F.3d 512, 515 (1st Cir.1993). The actions of the bankruptcy court with regard to employment and compensation of professionals are given "considerable deference." *In re DN Associates*, 3 F.3d at 515, *citing, In re Martin*, 817 F.2d 175, 182 (1st Cir.1987) ("The bankruptcy judge is on the front line, in

the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.")

## FACTS

### A. Debtor's Initial Motion to Employ.

On September 29, 1993, the Debtor, Independent Engineering Company, Inc., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et. seq. On that same date, the Debtor filed a Motion to Employ Thomas Miller as counsel, a supporting affidavit and a "Statement pursuant to Rule 2016(b)." At that time, Miller's affidavit and rule 2016 Statement reflected that the source of the $10,000 retainer was the company's president, Al Peterson. The initial application, affidavit and rule 2016 statement did not set forth the terms of the engagement or the fee agreement between the Debtor and Miller.

### B. The Amended Motion to Employ.

On October 27, 1993, the Debtor filed an amended motion to employ counsel that incorporated a copy of a fee agreement by and between the Debtor, Miller, and Peterson.[1] Paragraph 2 of the fee agreement stated that "the Firm will be paid $10,000 as a security deposit retainer." Paragraph 6 provided for monthly billing against the retainer, with the retainer to be replenished by the Debtor.

### C. The Approval of Miller as Counsel.

On October 29, 1993, the Court endorsed the amended motion to employ as follows: "Application approved. Notwithstanding paragraph 6 of the attached agreement, all compensation shall be subject to approval by the court upon appropriate application. /s/Joan N. Feeney."

### D. The First Amendment to the Rule 2016(b) Statement.

On December 2, 1993, Miller filed his First Amendment to the Rule 2016(b) Statement wherein he disclosed for the first time that he had taken draws against the retainer and had received post-petition payments from the Debtor as follows:

Oct. 9, 1993: $3,007.80 (billed against retainer)

Oct. 29, 1993: $3,007.80 (post-petition payment by the Debtor)

Nov. 30, 1993: $4,612.80 ($3,088.68 billed against retainer)

As of December 2, 1993, Miller had filed no fee applications. The Court had approved no fees; it had authorized no payments. In response to Miller's December 2 disclosure, the Court ordered him to file an interim fee application. In response, Miller filed a fee application. The United States Trustee objected. After a hearing, the bankruptcy court entered its order vacating the October 29, 1993 endorsed order approving Miller as counsel and further ordered Miller to disgorge all retainers and fees. This appeal followed.

## DISCUSSION

■ Professionals employed in a bankruptcy case are subject to "particularly rigorous conflict-of-interest restraints...." *Rome v. Braunstein*, 19 F.3d 54, 57 (1st Cir.1994); *see also In re Saturley*, 131 B.R. 509, 516 (Bankr.D.Me.1991). In order for the bankruptcy court to fairly evaluate applications for employment of professionals, there must be full and complete disclosure of all connections with the debtor. 11 U.S.C. § 329(a);[2] FED.

---

1. Peterson appears to have personally guaranteed the Debtor's fees. The bankruptcy court did not address the issue.

2. 11 U.S.C. § 329(a) provides, in relevant part, as follows:

   Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of compensation paid or agreed to be paid, if such payment or agreement was made after one

R.BANKR.P. 2016(b).[3] "[C]oy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Saturley,* 131 B.R. at 517. Full and complete disclosure includes, *inter alia,* a complete disclosure of fee arrangements with the Debtor so the court can assess conflicts that may give rise to disqualification. *In re Martin,* 817 F.2d 175, 182 (1st Cir. 1987).

In this case, Miller argues that his mere failure to timely disclose the draws and post-petition payment cannot stand alone as the basis for disqualification and disgorgement. Miller suggests that in the absence of a specific finding of ill will or wrongful intent, the bankruptcy court must allow some compensation if he can show that he provided some benefit to the estate. This argument is rejected. Courts have long recognized that failure to disclose is a sufficient basis for disqualification or disgorgement. *In re Hot Tin Roof, Inc.* 205 B.R. 1000 (1st Cir. BAP 1997); *see also In re Saturley,* 131 B.R. at 517, *citing, In re Kendavis Industries Intern., Inc.,* 91 B.R. 742 (Bankr.N.D.Tex. 1988); *In re Envirodyne Industries, Inc.,* 150 B.R. 1008 (Bankr.N.D.Ill.1993).

Debtor's initial motion to employ failed to state the terms of the engagement and the nature of the fee agreement with the Debtor and its principal. Miller's October 27, 1993 amended motion incorporated the fee agreement, but failed to disclose the October 9, 1993 draw against the retainer. When the Court endorsed the order approving Miller as Debtor's counsel, it was not aware that Miller had, that very same day, received a post-petition payment directly from the Debtor. Miller did not file a supplemental disclosure describing the draws and post-petition payment until December 2, 1993.

At the time the court approved his employment, Miller's disclosure was grossly inadequate, and was not cured by his October 27, 1993 amendment. Miller's October 27, 1993 amended motion failed to disclose that Miller had drawn against the $10,000 security retainer on October 9, 1993, long before he had been approved as counsel. This conduct standing alone was sufficient to disqualify Miller and support the order requiring disgorgement. However, Miller continued to engage in a pattern of less than candid disclosure. He did not timely disclose the October 29, 1993 payment and he did not timely disclose the November 30, 1993 draw against the retainer.

Miller argues that since the amended motion to employ incorporated the fee agreement, and the fee agreement provided for replenishment of the retainer by the Debtor, he was not required to seek approval for the post-petition "replenishment" payment. The bankruptcy court is not required to plow through documents to discern the relationship and/or conflicts between the Debtor and its professionals. The burden of disclosure is on the attorney to file a complete statement that contains all of the information required by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure. Merely attaching a fee agreement that appears to provide for unmonitored post-petition payments by the Debtor does not satisfy the disclosure requirements. FED.R.BANKR.P. 2016(b) contemplates a clear statement of the Debtor's financial relationship with counsel.

year before the date of the petition, ... and the source of such compensation.

**3.** Rule 2016(b) of the Federal Rules of Bankruptcy Procedure provides, in relevant part, as follows:

Every attorney for a Debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States Trustee within 15 days after an order for relief, or at another time as the court may direct, the statement required by § 329 of the Code ... A supplemental statement shall be filed and transmitted to the United States Trustee within 15 days after any payment or agreement not previously disclosed.

Equally important here, the endorsement by the bankruptcy court clearly rejected the billing and replenishment provision contained in paragraph 6 of the fee agreement. Miller claims that he did not understand the meaning of the endorsement "Application approved. Notwithstanding paragraph 6 of the attached agreement, all compensation shall be subject to approval by the court upon appropriate application." It is incredible for Miller to suggest that he did not understand the legal significance of the word "notwithstanding," but even if that were the case, Miller should have requested clarification from the bankruptcy court prior to making draws against the retainer and/or accepting post-petition payments. Given his failure to disclose the draws and his failure to seek court approval of the post-petition payments, the bankruptcy court was justified in disqualifying Miller as counsel and ordering all fees disgorged.

We also reject Miller's argument that since the retainer was paid by a third party, Miller did not have to seek approval to draw against it.[4] Although it is common for professionals to obtain a retainer from the debtor or a third party, treatment of that retainer in bankruptcy depends on how the retainer was obtained and the type of retainer.[5] It is undisputed that the $10,000 was a "security" type retainer that provided for a refund of unapplied funds to the Debtor. Specifically, paragraph 1 of the fee agreement defines the client as the Debtor, and paragraph 4 expressly states that any excess over billing would be re-

turned to the "Client." Thus, pursuant to the terms of the contract, the Debtor retained an interest in the unapplied retainer upon the filing of the petition, and the retainer became property of the Debtor's estate. *See, e.g., In re Downs,* 103 F.3d 472, 478 (6th Cir.1996); *In re Saturley,* 131 B.R. at 515; 76 B.R. 610, 612 (Bankr. S.D.Ohio 1987); and *In re Tri–County Water Ass'n. Inc.,* 91 B.R. 547, 551 (Bankr. D.S.D.1988). Miller's failure to seek court approval prior to drawing against an asset of the estate, (i.e., the security retainer), violated the Bankruptcy Code. *In re Downs,* 103 F.3d at 478.[6] There is no justification for draws against this estate property without prior court approval.

## CONCLUSION

Miller failed to show that the bankruptcy court abused its discretion in disqualifying Miller from serving as Debtor's counsel and ordering him to disgorge all retainers and fees. The bankruptcy court order is **AFFIRMED.**

---

4. The United States Trustee alleges that Miller raises the source of the retainer and related arguments for the first time on appeal. Given the handwritten notes identifying Peterson as the source of funds in the initial Rule 2016(b) statement, we will address this argument.

5. There are different types of retainer agreements, the two most common are "classic" retainers and "security" retainers. *In re McDonald Bros., Const., Inc.,* 114 B.R. 989, 999 (Bankr.N.D.Ill.1990) (comprehensive overview of various retainer agreements). The parties agree that the retainer in this case is

properly classified as a "security" type retainer.

6. The First Circuit recently shed light on the subject of drawing down against security retainers in a passing comment: "Of course, if the $35,000 transfer constituted a "security" retainer, counsel would be required to file a section 330 fee application to withdraw the retainer." *Indian Motocycle Assoc. v. Mass. Housing Finance,* 66 F.3d 1246, 1255 (1st Cir.1995).