In re McCRARY & DUNLAP CON-
STRUCTION COMPANY, LLC,
Debtor.

Ellen B. Vergos, United States
Trustee, Appellant,

v.

Mendes & Gonzales, PLLC, Appellee.

No. 98–03220–GP3–11.

CIV. A. No. 3:00–0475.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 10, 2001.

Beth Roberts Derrick, Nashville, TN, for appellant.

Robert J. Gonzales, Jr., Robert J. Mendes, Mendes & Gonzales, PLLC, Nashville, TN, for appellee.

### MEMORANDUM

TRAUGER, District Judge.

On this appeal from a decision of the United States Bankruptcy Court for the Middle District of Tennessee, the United States Trustee alleges that the Bankruptcy Court erred in failing to sanction Mendes & Gonzales, PLLC ("Mendes & Gonzales"), special counsel to McCrary and Dunlap Construction Company, LLC ("the Debtor") properly for violations of 11 U.S.C. §§ 327, 329, 330 and Federal Rules of Bankruptcy Procedure 2014 and 2016. (Docket No. 8) In an April 27, 2000, Memorandum and Order, the Bankruptcy Court held that (1) Mendes & Gonzales committed technical violations of 11 U.S.C. § 329 and of Rule 2016 for failing to disclose fully payments from the Debtor's largest

unsecured creditor; (2) Mendes & Gonzales violated 11 U.S.C. §§ 330 and 331 by receiving funds from the Debtor's estate without obtaining prior court approval of the fees; and (3) Mendes & Gonzales should be sanctioned by a disgorgement of $4,489 ($500 for the disclosure violations and $3,989.00, which was ten percent of the fees already received for accepting payments without prior court approval). (Designation of Record No. 24)[1]

For the reasons discussed herein, the April 27, 2000 decision of the Bankruptcy Court will be **AFFIRMED**, in part, and **REVERSED**, in part.

### I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 30, 1998, McCrary & Dunlap Construction Company, LLC, filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Middle District of Tennessee. *See* Designation of Record No. 20, para. 1. On June 26, 1998, the Debtor filed an application to employ the law firm of Mendes & Gonzales[2] as Special Counsel to handle or assist the Debtor's counsel with litigation during the pendency of the chapter 11 case. (Designation of Record No. 5) In the application, Mendes & Gonzales stated, "The Debtor has agreed to pay [Mendes & Gonzales] an initial retainer in the amount of $10,000 which shall be billed against as services are rendered and expenses incurred." (Designation of Record No. 5, para. 6)

On July 1, 1998, the United States Trustee objected to the application to employ Mendes & Gonzales. (Designation of

---

1. The bankruptcy record is listed in this court as Docket No. 6. Items contained solely within that record will be cited as Designations of Record.

2. At the time of the employment application, the law firm was named Stanton & Mendes.

(Designation of Record No. 5) At some later point, the name was changed to Mendes & Gonzales, the Appellee in this case. The firm will be referred to as Mendes & Gonzales throughout this opinion.

Record No. 8) One of the United States Trustee's objections was that "the source of the $10,000 retainer had not been disclosed." *Id.* at 1. According to the United States Trustee, the "testimony at the meeting of creditors did not reveal any unencumbered source of funds for such a retainer." *Id.*

Chief United States Bankruptcy Judge George C. Paine, II, held a hearing on August 11, 1998 to consider the United States Trustee's objections. At the hearing, the following exchange took place between Robert Gonzales, of Mendes & Gonzales, Judge Paine, and Beth Derrick, Assistant United States Trustee:

> Mr. Gonzales: .... Your Honor, I am going to request that the court enter an order approving our employment over the U.S. Trustee's objection for the reason that ... *and give us an opportunity to put in the proposed order the source of the compensation.* We know that the compensation is coming from a principal of the debtor although we don't know the manner in which the debtor and the principal intend to treat that contribution, whether it be a loan to the debtor or whether it will be coming straight from the principal. Although, your Honor, I would say if it is treated as a loan, then that will come back for the court for approval whenever the principal seeks re-payment. So I would like to put in the order that the source of the compensation would be from a principal of the debtor and leave it at that.
>
> Judge Paine: You mean not who the principal is?
>
> Mr. Gonzales: No. Well, *I will certainly disclose who the principal is.*
>
> Judge Paine: Will that satisfy you, Mrs. Derrick?

> Ms. Derrick: Your Honor, I have had problems with the absence of Mr. McCrary[3] whom I believe is the source of the payments .... And I guess I would like to have a little more indication; if he is making a capital infusion, let's get that out on the table. This application has been filed for several weeks now and that decision should have been made whether this is going to be a capital infusion or if it's going to be a loan. If it's going to be a loan, it needs to be approved by the creditors in this case.
>
> ....
>
> Judge Paine: Well, it just doesn't seem like that should be such a great mystery. *The Court will overrule the objection conditioned on the source of the funds being divulged and how the dealing between the principal debtor is being treated. And so that will be required as a condition of overruling the objection of the U.S. Trustee.*
>
> Mr. Gonzales: *Should we put that information in the order approving the application?*
>
> Judge Paine: *Right.....*

(Transcript of Hearing, August 11, 1998, at 1–2) (emphasis added)

In the Order prepared and submitted by Mendes & Gonzales, the required disclosure was not made a condition of the firm's employment. Instead, the Order overrules the objection of the United States Trustee and unconditionally approves the employment of Mendes & Gonzales. (Designation of Record No. 10). The Order then states,

> It is further ordered that no later than 5:00 p.m. on Friday, August 14, 1998, the Debtor shall disclose to the U.S. Trustee the source of the retainer

---

**3.** Eddie McCrary was a principal shareholder and the largest unsecured creditor of the Debtor with a loan of $900,000. (Designation of Record No. 3, attach. Schedule F at 17)

funds that have been promised to be paid to Applicant, and if the source of the funds is a member or principal of the Debtor, the Debtor shall disclose whether payment of the funds shall be treated as a loan, a capital contribution, or otherwise.

*Id.* Judge Paine signed this Order on August 14, 1998, and it was entered on August 17, 1998.

The United States Trustee filed a motion to set aside the order approving the employment of Mendes & Gonzales on August 18, 1998. (Designation of Record No. 11) In this motion, the United States Trustee pointed out that the Order did not comport with Judge Paine's oral ruling at the August 11, 1998 hearing in several ways: (1) additional information on the retainer was required regardless of whether the source of the funds was a member or principal of the Debtor; (2) the additional information was to be provided in the Order itself, not merely to the United States Trustee; (3) the United States Trustee's objection to the employment was overruled only if the information was provided in an Order filed on or before Friday, August 14, 1998. (Designation of Record No. 11) In addition, the United States Trustee argued that none of the requested information was provided before August 14, 1998, either to the United States Trustee or in an order filed with the court, and although Mr. Gonzales advised the United States Trustee that he knew the source of the retainer on August 17, 1998, he did not provide any information on how the funds were to be treated. *Id.* Neither the Debtor nor Mendes & Gonzales responded to this motion from the United States Trustee, and the court failed to schedule a hearing or to take any further action on the motion. (Designation of Record No. 19 at 1–2)

On September 22, 1999, more than a year later, the Debtor filed a monthly operating report for August 1999 that included payments totaling $5,960.62 to Mendes & Gonzales for "legal services." (Designation of Record No. 12) On October 25, 1999, the Assistant United States Trustee sent a letter to Mr. Mendes, requesting "the basis for the payment as I do not believe your employment has been approved by the court." (Transcript of Hearing, February 29, 2000, attach., Letter to Robert Mendes, October 25, 1999) The Assistant United States Trustee states that she received no reply to this letter. (Designation of Record No. 16, para. 10) On December 15, 1999, the United States Trustee objected to the Debtor's Disclosure Statement in part on the ground that it contained no explanation of the "unauthorized" payments to Mendes & Gonzales. (Designation of Record No. 15, para. 4)

On January 26, 2000, the United States Trustee filed a second motion to set aside the August 17, 1998, Order approving the employment of Mendes & Gonzales and moved for the disgorgement of moneys paid to Mendes & Gonzales. (Designation of Record No. 16) The United States Trustee stated that the monthly operating reports for August, October, and November 1999 included payments to Mendes & Gonzales for "legal services," in respective amounts of $5,960.62, $4,304.90, and $594.12. *Id.* Further, the United States Trustee stated, "No fee application has been filed which would show the disposition of the $10,000 retainer received by Mendes & Gonzales; nor has a fee application been filed which would support the payment of $10,859.64 from property of the estate." *Id.*

On February 25, 2000, more than one and one-half years after assuming the representation, Mendes & Gonzales filed its

first application for allowance of compensation and reimbursement of expenses. (Designation of Record No. 17) The application covered the period June 17, 1998, through January 31, 2000 and stated:

> Applicant has not previously submitted an Application. The only compensation received by Applicant was an initial retainer in the amount of $10,000.00 and subsequent periodic payments totaling $29,775.64, for total payments received of $39,775.64. The source of the initial $10,000 retainer and $10,000 of subsequent payments was Eddie McCrary. The source of the remaining $19,775.64 of subsequent payments was funds of the Debtor. No fees have been awarded nor other compensation received.

*Id.,* para. 10. On February 28, 2000, Mendes & Gonzales responded to the United States Trustee's motion to set aside the employment and to disgorge fees. (Designation of Record No. 18) Mendes & Gonzales admitted that the August 17, 1998 Order prepared by them did not reflect Judge Paine's oral ruling on August 11, 1998, but claimed that the source of the retainer funds was disclosed to the United States Trustee via telephone on August 14, 1998. *Id.,* paras. 4–5. Further, Mendes & Gonzales stated that "the U.S. Trustee was advised last week that the funds paid will not be treated as a loan to the Debtor." *Id.,* para. 10. Mendes & Gonzales claimed that it had not been able to obtain this information earlier because Mr. McCrary and his individual lawyers were not forthcoming on the issue, "despite numerous requests." *Id.,* para. 11. Finally, Mendes & Gonzales requested that any ruling on the United States Trustee's motion for disgorgement be postponed until after the court considered the February 25, 2000 fee application. *Id.,* para. 14.

The court held a hearing on the United States Trustee's motion on February 29, 2000, at which the United States Trustee stated that it was not

> disputed that the $10,000 was applied to the fees, and it has also been stipulated that not only was the $10,000 received from Mr. McCrary, but a subsequent $10,000 payment was received [but] not disclosed to the Court nor to the United States Trustee until a fee application was filed last Friday with the Court. We don't know how that $10,000 is going to be applied, if it's going to be as a loan or if that's a further guarantee of the payment. We don't know when it was received. Not only that, Your Honor, the employment application ... provides ... that the debtor "has agreed to pay [Mendes & Gonzales] an initial retainer in the amount of $10,000, which shall be billed against as services are rendered and expenses incurred. Draws will be taken from said retainer as earned or spent. However, any such payments or reimbursements shall be subject to periodic applications to the court for approval of compensation detailing actual use of the funds." It is not disputed that there have been no fee applications, or neither is it disputed that Mendes & Gonzales have received almost $20,000 from the estate without any provision for doing so within the employment application or within the order approving the employment application.

(Transcript of Hearing, February 29, 2000, at 3–4)

The Bankruptcy Court issued its decision on March 3, 2000, overruling the United States Trustee's motion to set aside the employment order but reserving ruling on disgorgement until the court could consider the fee application. (Designation of Record No. 19) Essentially, the court blamed its own failure to set a hearing on the United States Trustee's August 18, 1998 motion to set aside the employment

order for allowing the situation to "spiral[ ] out of control." *Id.* at 2. The court excused Mr. Gonzales's failure to conform the written order of August 14, 1998 to the court's ruling made on August 11, 1998 and accepted his apology for the "excusable error." *Id.* The court similarly excused Mr. Gonzales's failure to respond to the United States Trustee's October 25, 1999 letter questioning the basis for seeking payment of fees from the Debtor based on the fact that "Mr. Gonzales again penitently admitted his shortcomings" in his inability to acquire the information regarding the nature of the $10,000 retainer provided by Mr. McCrary. *Id.* Finally, the court found that "there was no attempt to avoid the inquiries of the United States Trustee, and no deliberate effort on the part of Mendes & Gonzales to disobey the orders of this court." *Id.* at 3.

On April 10, 2000, the United States Trustee submitted a brief in support of her motion to disgorge the fees paid to Mendes & Gonzales, restating the arguments presented in the January 26, 2000 motion. (Designation of Record No. 21) In her brief, the United States Trustee also discussed the later $10,000 payment by Eddie McCrary to Mendes & Gonzales, which was not disclosed to the United States Trustee until Mendes & Gonzales filed its first fee application on February 25, 2000. *Id.* at 4, 10. The United States Trustee argued that the court had the authority to order full disgorgement and to deny compensation and that this was the appropriate sanction, given Mendes & Gonzales's failure to disclose fully the nature and source of the initial $10,000 retainer and the later $10,000 payment and for receiv-

ing fees without prior court approval. The parties stipulated that, by the date of the fee application, the Debtor's monthly operating reports reflected the following payments to Mendes & Gonzales:

| August 19, 1999 | $5,960.62 |
| October 4, 1999 | $4,304.90 |
| November 4, 1999 | $ 916.00 |
| November 19, 1999 | $ 594.12 |
| January 21, 2000 | $2,500.00 |
| January 27, 2000 | $2,500.00 |
| February 4, 2000 | $2,500.00 |
| February 4, 2000 | $ 590.81 |
| February 21, 2000 | $2,500.00 |
| February 25, 2000 | $2,000.00 |

(Designation of Record No. 21 at 3–4)[4] In total, Mendes & Gonzales had received $24,366.45 from the Debtor by February 25, 2000. *Id.*

In its response brief, Mendes & Gonzales argued that "[t]he first issue—that the Debtor never formally set forth how the money Mr. McCrary provided for attorneys' fees would be treated—has been fully resolved by this Court." (Designation of Record No. 22 at 2) Mendes & Gonzales did not address the second $10,000 payment from Mr. McCrary but cited an exchange between Judge Paine and Mr. Gonzales from the February 29, 2000 hearing relating to the issue of post-petition fees:

Judge Paine: What about the issue of the payment of fees without court approval?

Mr. Gonzales: Your Honor, I suppose that I answer that this way. It has been my standard practice over the last two years to put in my employment applications that we would be paid an initial retainer and subsequent post-petition payments, understanding that those are

---

**4.** As of January 31, 2000, then, the monthly operating reports of the Debtor reflected payments totaling $16,775.64 to Mendes & Gonzales. In its fee application and again in stipulations provided to the court, Mendes & Gonzales stated that it had received $19,775.64. (Designation of Record No. 17, para. 10; Designation of Record No. 20, para. 11) This discrepancy of $3,000.00 was not addressed by the bankruptcy court nor by the United States Trustee.

at my peril, that they're going to be subject to court approval, and subject to disgorgement if the Court does not approve my fees. In looking back, this is another mistake I made, and looking back at this employment application, I don't have that language in the employment application ....

(Designation of Record No. 22 at 3, quoting Transcript of Hearing, February 29, 2000, at 33) The remainder of the brief was devoted to arguing that Mendes & Gonzales should not be sanctioned because the United States Trustee did not clearly and directly notify Mendes & Gonzales about her concerns regarding the post-petition payments without prior court approval. *Id.* at 3–6. Without such notification, Mendes & Gonzales maintained that it should not be held to have acted willfully in failing to comply with the Code or the court's directions. *Id.* at 6

On April 27, 2000, the Bankruptcy Court issued the Memorandum and Order on the United States Trustee's motion for disgorgement that is the subject of this appeal. (Designation of Record No. 24) The court relied on its earlier March 3, 2000 Order to address the United States Trustee's arguments concerning Mendes & Gonzales's failure to properly disclose the source and nature of the $10,000 retainer. *Id.* at 4 & n. 1. The court did "not doubt the sincerity of the apology of M & G about the string of miscommunications," but found that "a technical violation of section 329 and Federal Rule of Bankruptcy Procedure 2016 did occur." *Id.* at 6. At the same time, the court interpreted Sixth Circuit law to require a willful disregard of fiduciary obligations before complete disgorgement would be the appropriate sanction. *Id.* at 7. The court found that its own failure to set a timely hearing, taken together with its observations of the credibility of Mendes & Gonzales during the course of the case, prevented this technical

violation from being characterized as "intentional or somehow covert." *Id.* The court sanctioned Mendes & Gonzales by ordering disgorgement of $500 of fees received for their "unintentional and technical violation of § 329 and Rule 2016." *Id.* at 8.

The court then considered the post-petition payments received by Mendes & Gonzales and again found that Mendes & Gonzales expressed their "sincerest apologies and explained that any violation of the Code was inadvertent. For all the same reasons stated above, the court found the apology genuine and the credibility of the witnesses sound." *Id.* at 9. The court found that "this is more than a technical violation of the Code and Rules; however, the court is unwilling to characterize the conduct of M & G as reckless or flagrant." *Id.* The court found that Mendes & Gonzales was not attempting to conceal the receipt of post-petition payments, as evidenced by the fact that they were listed in the monthly operating reports sent to the United States Trustee. The court pointed to Mendes & Gonzales's apparent lack of awareness of the issue prior to February 2000 and found that "[t]hese practitioners, although not inexperienced, are relatively new to bankruptcy." *Id.* at 10. This fact, along with the lack of intent evidenced by what the court perceived to be sincere admissions of mistakes, led the court to find that complete disgorgement was not commensurate with the egregiousness of the violation. Instead, the court sanctioned Mendes & Gonzales with disgorgement of ten percent (10%) of the fees already collected, or $3,989. Although the court stated that "this sanction appears harsh in light of the unintentional violations of M & G," ten percent disgorgement was the appropriate sanction to "ensure the integrity of the process." *Id.* The court went on to approve the fee applica-

tion "in full," awarding some $72, 765 in total fees from which $4,489 in sanctions was to be deducted. *Id.* at 13–14.[5]

The United States Trustee filed this appeal on June 23, 2000, arguing that the court erred by (1) failing to sanction Mendes & Gonzales properly for its failure to timely disclose the nature and source of its retainer in the case; (2) failing to sanction Mendes & Gonzales properly for its failure to disclose the nature and extent of its conflicts of interest arising from the firm's receipt of $20,000 from Eddie McCrary, the largest unsecured creditor in the case;[6] and (3) failing to sanction Mendes & Gonzales properly for taking estate funds in payment of fees without obtaining prior approval of the bankruptcy court. (Docket No. 8 at 1)

## II. ANALYSIS

■ This court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a) (1994). The district court, acting as an appellate court, "reviews a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and its legal conclusions, which are subject to de novo review on appeal, are correct." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988). Sanctions imposed by a bankruptcy court "should not be disturbed unless a clear abuse of discretion is found." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (internal citations omitted).

5. The United States Trustee did not raise Mendes & Gonzales's fee award on appeal, and the Bankruptcy Court's determination of the reasonableness of the fee is not presently before the court. (Docket No. 8 at 1)

6. The Appellant's brief also claimed that Mendes & Gonzales failed to properly disclose its conflict of interest arising from the simultaneous representation of the Debtor and Steve Dunlap, an officer and co-obligor of the

### A. Receipt of Post–Petition Payments without Prior Court Approval

The Bankruptcy Court found that, by February 25, 2000, Mendes & Gonzales had received payments from the Debtor in the amount of $24,336.45 and payments from Eddie McCrary, the largest unsecured creditor of the Debtor, in the amount of $20,000, without receiving prior court approval for those fees. (Designation of Record No. 24 at 8–9) Although the court found that "it is not disputed that M & G received funds from the retainers and from the estate prior to receiving court approval," *id.* at 8, and that this was "more than a technical violation" of 11 U.S.C. §§ 330 and 331, *id.* at 9, it ordered disgorgement of only $3,989 of the total fees awarded, which were in the amount of $72,765. *Id.* at 13–14. Despite the United States Trustee's October 25, 1999 letter to Mr. Mendes and her December 15, 1999 objection to the Disclosure Statement, both of which questioned the firm's receipt of post-petition payments from the Debtor, and the January 26, 2000 motion to set aside employment and to disgorge, the Bankruptcy Court accepted the assertion by Mendes & Gonzales that they did not understand that the United States Trustee was objecting to anything but the original retainer until the February 29, 2000 hearing on the latter motion. *Id.* at 10. The court went on to find: "Their contrite, sincere admission of their mistakes evi-

Debtor. (Docket No. 8 at 1) This information was contained in Mendes & Gonzales's employment application (Designation of Record No. 5), and the United States Trustee has not alleged any conflict more extensive than what was covered there. Thus, the court will focus on the conflicts relating to the money provided by Eddie McCrary, which are the basis of the parties' arguments in the court below and on appeal.

dences their lack of intent to disregard or disrespect the law." *Id.*

 The findings of fact of the bankruptcy court will not be overturned unless they are clearly erroneous. Reluctantly, this court must find the Bankruptcy Court's finding that the conduct of Mendes & Gonzales was not willful because they are "relatively new to bankruptcy" and were sincere in their apologies is clearly erroneous.

One of the first things lawyers new to bankruptcy learn is that attorney's fees must be approved by the court. In the employment application, the Debtor states that Mendes & Gonzales was chosen to serve as special counsel "because its attorneys are experienced in bankruptcy matters and litigation and are well qualified to perform the professional services that will be required as special counsel for the Debtor." (Designation of Record No. 5, para. 4) In the fee application, Mendes & Gonzales justified the rates charged for its services by touting the qualifications of its lawyers. (Designation of Record No. 17, para. 6) Mr. Gonzales was described as having "practiced in the area of bankruptcy law almost exclusively since his admission to practice in 1994." *Id.* Mr. Gonzales explained his violation to the Bankruptcy Court by admitting that he had failed to put language in the employment application that would allow for post-petition payments with periodic court review, as was his "standard practice" in bankruptcy matters. (Transcript of Hearing, February 29, 2000, at 33) The attorneys of Mendes & Gonzales were aware of their responsibilities and were experienced in bankruptcy matters.

Even if the lawyers had been entirely new to bankruptcy practice, this would not have served to excuse their violation of the Rules and Code. As the Second Circuit noted in *In re Arlan's Dept. Stores, Inc.,*

"if [the firm] was incompetent in bankruptcy matters, as it now urges, that fact either should have been brought to the attention of the bankruptcy court when [the lawyer] sought the employment or [the lawyer] should have immediately and assiduously undertaken a study of bankruptcy rules and procedures." 615 F.2d 925, 939 (2nd Cir.1979). In this case, the firm touted its experience as grounds to approve its employment. It ought not now be able to excuse its deficiencies by claiming a lack of experience and knowledge.

The Bankruptcy Court made specific findings regarding the credibility and sincerity of Mr. Gonzales to which this court would like to defer. However, the Bankruptcy Court did not appear to consider certain facts that militate against this finding. Mendes & Gonzales received ten payments over a six-month period before filing any fee applications with the court. Their first fee application was filed only after the United States Trustee moved for disgorgement, arguing, in part, that Mendes & Gonzales had been receiving funds from the Debtor for more than five months without filing a fee application. (Designation of Record No. 17; Designation of Record No. 16, para. 9) Even after this motion was filed, Mendes & Gonzales continued to receive payments from the Debtor, including four payments in February. These are not the actions of naive, penitent lawyers who were totally unaware that they were violating the Code and Rules.

 The law on this issue is clear: "It is elementary that a professional may not solicit or accept compensation from a fiduciary without prior court approval and that compensation may be awarded only after notice to parties in interest and a hearing." *In re Rivers,* 167 B.R. 288, 304 (Bankr. N.D.Ga.1994); *In re Ind. Eng. Co., Inc.,* 197 F.3d 13, 16 (1st Cir.1999); *In re Com-*

*mercial Fin. Servs., Inc.,* 231 B.R. 351, 356 (Bankr.N.D.Okla.1999). Thus, "[t]aking a payment without court approval [is] improper conduct." *In re Rivers,* 167 B.R. at 304. In a similar case, where the attorney drew on the retainer and received other post-petition payments without prior court approval, the Bankruptcy Appellate Panel of the First Circuit found that "the bankruptcy court was justified in ... ordering all fees disgorged." *In re Independent Engineering Co., Inc.,* 232 B.R. 529, 532 (1st Cir. BAP 1999). Although considering disclosure obligations rather than court approval of fees, in *In re Downs* the Sixth Circuit found that "Rule 2016[is] fundamentally rooted in the fiduciary relationship between attorneys and the courts." 103 F.3d at 480. Thus, where the attorney demonstrated a "callous disregard" for his ethical obligations to the court, the Court found that the bankruptcy court had abused its discretion in failing to sanction the attorney with full disgorgement and a denial of all compensation. *Id.*

The Bankruptcy Court's findings of fact were clearly erroneous and its conclusions of law arising from the findings, therefore, were not correct. Mendes & Gonzales willfully failed to apply for court approval before receiving post-petition payments from and on the behalf of the Debtor. The Bankruptcy Court abused its discretion in failing to require full disgorgement of fees paid and denial of all compensation to Mendes & Gonzales for this violation.

### B. Failure to Disclose Fully the Payments from Eddie McCrary

As the fee application made clear for the first time, Mendes & Gonzales actually received two separate payments from Eddie McCrary, a principal and the largest unsecured creditor of the Debtor. The Bankruptcy Court had considered a number of objections from the United States Trustee relating to the first retainer payment, but the second payment was unknown to the court and to the United States Trustee prior to the filing of the first fee application one and one-half years after undertaking the representation. The United States Trustee argued that both retainer payments were violations that justified the imposition of sanctions. This court will consider the two payments separately.

As the Bankruptcy Court and the parties have recognized, the leading Sixth Circuit case on these issues is *In Re Downs,* 103 F.3d 472 (1996). In that case, one of the debtors' creditors approached Friedman, an attorney, and asked him to represent the Downses, the debtors, when their original attorney was incapacitated by a brain tumor. The Downses paid Friedman a $40,000 retainer that came from the creditor through another company. Some months later, Friedman received an additional $6,000 from the same source in the same way.

A year later, after the case had been remanded from the district court on another issue, the bankruptcy court ordered the Downses and Friedman to disclose "all information relating to the retainer." *Id.* at 476. Friedman filed a statement with the court that disclosed that the retainer had been furnished by the creditor, although the payment appeared to come from a company owned by the debtor's children. As sanctions for the failure to disclose this fee arrangement, the court ordered the entire retainer disgorged and denied all compensation for services rendered. On a motion to reconsider, the bankruptcy court reduced the amount of the § 329 sanction to $20,000 and rescinded its order denying all compensation under § 330. The district court affirmed.

On appeal, the Sixth Circuit affirmed the bankruptcy court's holding that Friedman had violated both § 329 and Rule 2016 in failing to disclose his fee arrangement but, finding an abuse of discretion, reversed the bankruptcy court's decision to reduce the sanction. Considering similar cases in other jurisdictions, the court found that they stood "for the proposition that the bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016." *Id.* at 479; *see also In re Fretter, Inc.*, 219 B.R. 769, 777 (Bankr. N.D.Ohio 1998) (finding that "all compensation should be denied to an attorney who willfully disregards his or her fiduciary obligations under the disclosure rules").

### 1. Initial Retainer Payment

From the time of the filing of their employment application in July 1998, the United States Trustee objected repeatedly to Mendes & Gonzales being special counsel for the Debtor. Many of these objections centered on the receipt by Mendes & Gonzales of the $10,000 retainer, listed in the employment application as being from the Debtor. The United States Trustee challenged the source of this retainer, and Mendes & Gonzales admitted at the August 11, 1998 hearing that the money actually came from "a principal." At that hearing, the United States Trustee argued that the money may have come from Eddie McCrary, who was the largest unsecured creditor of the Debtor, and, if true, that would be a significant conflict of interest. (Transcript of Hearing, August 11, 1998, at 2) Even when the United States Trustee directly raised the question, Mendes &

Gonzales did not disclose that Mr. McCrary was, in fact, the source of the retainer. *Id.*

It is clear from the transcript of the hearing and from the parties' later admissions that the Bankruptcy Court decided to overrule the United States Trustee's objections to the employment of Mendes & Gonzales on the condition that Mendes & Gonzales disclose the source and nature of the initial retainer in an order approving its appointment provided to the court by August 14, 1998. *Id.* at 2. The order that was submitted by Mendes & Gonzales instead unconditionally approved its appointment and separately ordered that the source and nature of the retainer be disclosed by August 14, 1998, not in the order itself but merely to the United States Trustee. The Order itself did not include that information. (Designation of Record No. 10) The Bankruptcy Court signed this Order, and the United States Trustee moved to set it aside the following day as not reflecting the court's actual order announced at the hearing. (Designation of Record No. 11)[7] Mendes & Gonzales never responded to the United States Trustee's motion, and the court never set it for hearing or ruled on it. As the Bankruptcy Court noted in its March 3, 2000 ruling, "these issues took on a life of their own, and the situation spiraled out of control." (Designation of Record No. 19 at 2)

█ Title 11 U.S.C. § 329 requires, "any attorney representing a debtor" to "file with the court a statement of the compensation paid or agreed to be paid ... and the source of such compensation." Under Rule 2014, an employment application must include the specific facts of "any proposed arrangement for compensation"

---

7. The United States Trustee filed a second motion to set aside the employment of Mendes & Gonzales in January 2000. (Designation of Record No. 16) This motion was considered and rejected by the Bankruptcy Court, and it is not before this court on appeal. (Designation of Record No. 19)

and "all of the person's connections with the debtor, creditors, [and] any other party in interest, . . . ." The purpose of these disclosure requirements is to ensure that lawyers and other professionals employed in a bankruptcy case are free of conflicts of interest.[8] *In Re Crivello,* 134 F.3d 831, 836 (7th Cir.1998).

 The employment application submitted by Mendes & Gonzales stated that a retainer of $10,000 would be paid by the Debtor. (Designation of Record No. 5, para. 6) At the hearing on the United States Trustee's objections to the employment, Mendes & Gonzales admitted that the retainer would come from a principal. (Transcript of Hearing, August 11, 1998, at 1) The employment application, therefore, violated § 329 of the Code and Rule 2014. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 880–81 (9th Cir.1995). The Sixth Circuit has ruled that such a violation could justify complete disgorgement and a denial of all fees. *See In re Downs,* 103 F.3d at 478–79. The Order that the Bankruptcy Court apparently unwittingly signed, however, appeared to modify the requirements of § 329 and Rule 2014 as applied to Mendes & Gonzales in this case. Thus, Mendes & Gonzales's conduct, although not in conformity with the Code or Rules and arguably not in compliance with the order they submitted,[9] cannot be seen as a willful violation requiring full disgorgement and a denial of all fees.

The Bankruptcy Court did find that a technical violation had occurred and sanctioned Mendes & Gonzales with disgorgement of $500. (Designation of Record No. 24 at 6, 8) On review, this court cannot find that the Bankruptcy Court's decision regarding the initial retainer, given the history of the case, relied on clearly erroneous findings of fact or used an erroneous legal standard. Thus, although this sanction seems minimal for this violation, the erroneous entry of the noncompliant order submitted by Mendes & Gonzales mitigates the situation regarding the first retainer payment.

### 2. Second Payment from Eddie McCrary

The fee application disclosed for the first time that Mendes & Gonzales had received an additional $10,000 retainer from Eddie McCrary. (Designation of Record No. 17, para. 10) Although the Bankruptcy Court included the fact that Mendes & Gonzales had received a second payment of $10,000 from the Debtor's largest unsecured creditor in its findings of fact, this issue was not adequately addressed by the bankruptcy court.[10] The court discussed the receipt of

8. Here an additional reason that the United States Trustee desired to know if Mr. McCrary was the source of the funds was the fact that the Debtor's previous lawyer had concluded that the Debtor would not be able to reorganize if Mr. McCrary stayed involved in the case. (Docket No. 8 at 12 n. 5; Transcript of Hearing, April 18, 2000, at 36)

9. The United States Trustee has argued that Mendes & Gonzales did not even comply with the court order they drafted because the source of the retainer was not disclosed until August 17, 1998 and the nature of the retainer was not fully disclosed until the motion for disgorgement was pending with the bankruptcy court.

10. This issue was properly raised by the United States Trustee in the supplemental brief filed April 10, 2000. (Designation of Record No. 21) In addition, questions surrounding the second payment were addressed at both the February and April hearings. (Transcript of Hearing, February 29, 2000, at 3–4; Transcript of Hearing, April 18, 2000, at 40) The bankruptcy court included the second payment in the stipulated facts in the April 27, 2000 Memorandum and included the second payment in the discussion of accepting fees without receiving prior court approval. (Designation of Record No. 24) Thus, the second payment and the failure to disclose it were issues before the bankruptcy court that were

this payment in its consideration of the failure by Mendes & Gonzales to receive prior approval of fees but did not address it as a failure to disclose, which is how it was raised by the United States Trustee.

■ The first time this payment was disclosed to either the bankruptcy court or the United States Trustee was in Mendes & Gonzales's fee application, but there is no information concerning when the payment was received or the nature of it. The fee application stated that it included payments made by January 31, 2000, and the fee application was not filed with the court until February 25, 2000. (Designation of Record No. 17) As a result, the payment must have been received more than fifteen days before it was disclosed to the court. On its face, this is a violation of Rule 2016, which requires that all payments received by Debtor's counsel be disclosed within fifteen (15) days of their receipt. *See In re Park–Helena*, 63 F.3d at 881 ("The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions do not vitiate the failure to disclose.") (internal citations and quotation marks omitted); *see also Halbert v. Yousif*, 225 B.R. 336, 346, 349–51 (E.D.Mich.1998).

■ The question of whether the Bankruptcy Court abused its discretion in failing to sanction Mendes & Gonzales with full disgorgement and no compensation for this failure to disclose turns on whether this violation was willful. The United States Trustee had been objecting to payments from Eddie McCrary since August 1998, based on his position as the largest unsecured creditor of the Debtor. The United States Trustee repeatedly objected to the employment of Mendes & Gonzales

on the basis of the receipt of a payment from Mr. McCrary. The receipt of payments from the Debtor without prior court approval was found not to be willful by the bankruptcy court, based in part on the lack of an attempt to conceal the payments from the United States Trustee; they were listed clearly in the Debtor's monthly operating reports. The second payment from Mr. McCrary, however, was not disclosed in any fashion prior to the submission of the fee application.

> In *In re Downs*, the Sixth Circuit stated Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts. Friedman, by his conduct in these proceedings, demonstrated a "callous disregard" for those duties. Under these circumstances, we believe that the bankruptcy court abused its discretion in allowing Freidman and Mapother to retain any fees.

103 F.3d at 480; *see also Halbert*, 225 B.R. at 358 (reviewing cases and finding denial of compensation a common sanction for failure to satisfy disclosure duties). In this case, Mendes & Gonzales demonstrated a similar disregard for their duties in failing to disclose the receipt of a second $10,000 retainer from the Debtor's largest unsecured creditor. Even though the failure to disclose the first retainer payment is somewhat mitigated by the bankruptcy court's admitted failings in this case, no such circumstances affect the perception of the second payment. Further, Mr. Gonzales clearly had to be aware of Mr. McCrary's status as the Debtor's largest

considered in the United States Trustee's motion for disgorgement and denial of compensation.

unsecured creditor by that point and knew of the United States Trustee's objections to the receipt of payments from him. Given Mr. Gonzales's experience, both in bankruptcy law in general and within this case, there can be no doubt that he was aware of his fiduciary obligation to disclose this payment to the court and to the United States Trustee. The failure to do so, in light of the many objections and questions raised by the United States Trustee throughout this case, must be characterized as a willful disregard of these fiduciary obligations.

In failing to consider fully the actions of Mendes & Gonzales in not disclosing this second payment from Mr. McCrary, the Bankruptcy Court erred. Under *In re Downs*, the bankruptcy court has broad discretion to determine appropriate sanctions, but it is an abuse of that discretion to allow an attorney to retain any compensation where the violation of disclosure rules was willful. The conduct of Mendes & Gonzales, both with respect to the second payment from Mr. McCrary and in the context of the other violations, constituted a willful disregard of the fiduciary obligations of bankruptcy counsel. The Bankruptcy Court abused its discretion in allowing Mendes & Gonzales to retain ninety percent (90%) of the fees already collected and in approving the additional fees sought in the application.

## III. CONCLUSION

For the reasons discussed herein, this court finds that the Bankruptcy Court abused its discretion in failing to sanction Mendes & Gonzales with complete disgorgement and a denial of all compensation. The April 27, 2000 decision of the bankruptcy court will be **AFFIRMED**, in part, and **REVERSED**, in part.