OPINION
COLE, Circuit Judge.
Mendes & Gonzales, PLLC (“M&G”), special litigation counsel to McCrary & Dunlap Construction Company, LLC, the debtor in this bankruptcy case (“Debtor”), appeals the district court’s judgment ordering complete disgorgement of fees received by the firm and denial of all compensation. The district court imposed this sanction after finding that M&G had willfully failed to: (1) seek court approval prior to receiving compensation, and (2) disclose the receipt of the second of two $10,000 retainer payments from Eddie McCrary (“McCrary”), the Debtor’s principal and largest unsecured creditor. The district court reversed in part and affirmed in part the bankruptcy court’s finding that M&G had acted inadvertently, and not willfully, and, accordingly, found that the bankruptcy court abused its discretion in failing to order full disgorgement and complete denial of fees. For the following reasons, we VACATE the judgment of the bankruptcy court and REMAND this case to that court for further proceedings consistent with this opinion.
I. BACKGROUND
On March 30, 1998, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the “Code”). On June 26, 1998, the Debtor filed an application for approval of its employment of Stanton and Mendes, PLLC (the “Employment Application”) pursuant to § 327 of the Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the “Rules”).[1] The *772 Employment Application requested approval of the employment of M & G as special counsel to assist in certain “complex litigation” in which the Debtor was involved. The Employment Application stated that M&G was chosen “because its attorneys are experienced in bankruptcy matters and litigation and are well qualified to perform the professional services that will be required as special counsel for the Debtor.” Joint Appendix (“J.A.”) at 24. The Employment Application also stated that the Debtor had “agreed to pay M&G an initial retainer in the amount of $10,000.00 which shall be billed against as services are rendered and expenses incurred.” Id. Approval of the Employment Application, nunc pro tunc, to June 17, 1998, the date M&G began assisting the Debtor, was requested. In support of the Employment Application and as required by the Rules, Robert J. Gonzales (“Gonzales”), a member of M&G, filed a verified statement acknowledging that all compensation would be renewable by the bankruptcy court and subject to the court’s approval.
On July 1, 1998, the United States Trustee (the “Trustee”) filed an objection to the Employment Application. The objection requested that the Employment Application be denied or modified because: (1) it was presented by a person who was neither the Debtor’s designated representative, nor a professional approved by the court to represent the Debtor; and (2) the source of the initial $10,000 retainer (the “First Retainer Payment”) that the Debtor had agreed to pay M&G had not been disclosed.
On August 11, 1998, the bankruptcy court held a hearing on the Employment Application and the Trustee’s objection. At this hearing the Trustee represented that, although her objection to the presentation of the Employment Application by an unauthorized person had been resolved, the source of M&G’s retainer had yet to be disclosed as required by the Rules. In response, Gonzales requested that the bankruptcy court enter an order approving the employment of M&G on the condition that he be permitted to include the source of the retainer in the order appointing the firm as special counsel. Gonzales represented that: “We know that the compensation is coming from a principal of the debtor although we don’t know the manner in which the debtor and the principal intend to treat that contribution, whether it be a loan to the debtor or whether it will be coming straight from the principal.” J.A. at 139.
The Trustee informed the bankruptcy court that she believed McCrary was the source of the retainer and therefore M&G was required to disclose whether McCrary would be making a capital contribution or a loan.[2] It is not clear from the record that M&G was aware of McCrary’s creditor status at the time the Employment Application was filed. The bankruptcy court overruled the Trustee’s objection and approved the Employment Application “conditioned on the source of the funds being divulged and how the dealing between the principal [and the] debtor is being treated.” J.A at 140. Gonzales inquired of the court: “Should we put that information in the order approving the application?” Id. The bankruptcy court responded: “Right.” Id.
On August 14, 1998, the bankruptcy court signed the order as drafted and tendered to it by M&G (the “Retention Order”). The Retention Order, which was *773 not entered on the court’s docket until August 17, 1998, stated in pertinent part:
It is therefore ordered that the employment of the law firm of Mendes & Gonzales, PLLC to represent the Debtor as special counsel in accordance with the Application, is hereby approved in all respects nunc pro tunc to June 17, 1998, the date Applicant began assisting the Debtor. It is further ordered that no later than 5:00 p.m. on Friday August 14, 1998, the Debtor shall disclose to the U.S. Trustee the source of the retainer funds that have been promised to be paid to Applicant, and if the source of the funds shall be treated as a loan, a capital contribution, or otherwise.
J.A. at 33-84. Thus, the Retention Order did not actually include information relating to the treatment of the retainer funds.
On August 18, 1998, the Trustee filed a motion to set aside the Retention Order (the “First Motion”). In the First Motion, the Trustee asserted that because the Retention Order did not fully comport with the bankruptcy court’s ruling at the August 11, 1998 hearing, the conditions precedent to entry of the order had not been met. In the First Motion, the Trustee asserted that M&G’s employment was not properly authorized for the following reasons:
1. Additional information regarding the source of the retainer funds and the treatment of the transfer of the retainer funds to [M&G] was to be provided regardless of whether the source of the funds was a member or principal of the Debtor.
2. The additional information was to be provided in the order approving the employment rather than merely to the U.S. Trustee.
3. The objection of the U.S. Trustee to the employment was overruled only if the additional information [was] provided in an order filed on or before Friday, August 14,1998.
4. None of the additional information was provided to the U.S. Trustee on or before August 14,1998, nor was it provided in an order filed with the court on or before that date.
5. On Monday, August 17, 1998, Mr. Gonzales advised the Assistant U.S. Trustee that he knew the source of the retainer but not how payment of the funds was to be treated. The undersigned was advised that no further information had been obtained by Mr. Gonzales on Tuesday, August 18,1998.
J.A. at 36-37. Apparently due to an omission on the part of the bankruptcy court, a hearing on the First Motion was never scheduled. It does not appear that either the Trustee or Debtor made any effort to call this oversight to the court’s attention and obtain a hearing date on the First Motion.
More than a year later, on September 14, 1999, the Debtor filed an operating report for the month ending August 31, 1999 (the “August Operating Report”). The August Operating Report disclosed that M&G received payments from the Debtor for legal services by checks in the amounts of $960.62 and $5,000 on August 19, 1999. On October 25, 1999, the Trustee sent a letter to M&G (the “October 25 Letter”), requesting that the firm “advise” the Trustee of the basis for the payments to M&G for legal services totaling $5,960.62 listed in the August Operating Report “as I do not believe your employment has been approved by the court.” J.A. at 80.[3] M&G had, of course, been *774 appointed, nunc pro tunc, as special counsel effective June 17,1998.
On November 15, 1999, the Debtor filed a disclosure statement in support of its proposed plan of reorganization. One month later, on December 15, 1999, the Trustee filed its objection to the disclosure statement (the “Disclosure Statement Objection”). The Trustee asserted that the disclosure statement should not be approved because, among other reasons, “[t]he debtor in possession has not included a statement regarding the unauthorized post-petition payments to Mendes & Gonzales and what action, if any, it plans to take to recover those funds.” J.A. at 72. In the Disclosure Statement Objection, the Trustee also pointed out that:
The debtor in possession proposes to pay Eddie McCrary’s “claim” on the same basis as general unsecured claims. Information as to the claim should be provided, especially in light of the questions concerning the employment of Mendes & Gonzales and the questions raised at the § 341 meeting of creditors concerning Mr. McCrary’s pre-petition surrender of the Debtor’s assets to creditors and his post-petition involvement with the company’s reorganization efforts.
J.A. at 74.
On January 26, 2000, more than seventeen months after filing the First Motion, the Trustee filed another motion to set aside the Retention Order (the “Second Motion”), again requesting that the Retention Order be set aside and that all monies paid to M&G by the Debtor be ordered disgorged. In support of the Second Motion, the Trustee asserted the following: (1) there had been no ruling on the First Motion; (2) M&G was acting as special counsel to the Debtor by representing the Debtor in adversary proceedings and, according to the August Operating Report and the operating reports filed October 31 and November 30, 1999, had received payments totaling $10,859.64; (3) no fee application had been filed disclosing the disposition of the initial retainer received by M&G or supporting the payments of $10,859.64 to M&G; and (4) M&G had failed to respond to the October 25 Letter, which questioned the basis for the payment of $5960.62 listed in the August Operating Report.
On February 25, 2000, more than eighteen months after its appointment as special counsel, M&G submitted its “First Application of Mendes & Gonzales, PLLC for Allowance of Compensation and Reimbursement of Expenses” (the “Fee Application”). The Fee Application sought allowance of fees and expenses in the amount of $72,764.89 for the period from June 17, 1998 through January 31, 2000. M&G included as an attachment to the Fee Application a summary of services performed and expenses incurred by the firm during that time period. The Fee Application set forth the following information: (1) M&G accepted employment on behalf of the Debtor upon the payment of the First Retainer Payment; (2) M&G subsequently received payments totaling $29,775.64; (3) McCrary paid the First Retainer Payment as well as an additional $10,000 retainer payment (the “Second Retainer Payment”), which represented $10,000 of the $29,775.64 received by M&G; and (4) the Debtor made payments of $19,775.64 directly to M&G. Thus, as of January 31, 2000, M&G had received payments totaling $39,775.64 from the Debtor and McCrary.
According to the district court opinion, on February 28, 2000, M&G responded to the Second Motion, explaining that the source of the First Retainer Payment had been disclosed to the Trustee by telephone on August 17, 1998. M&G also claimed that the Trustee had been advised a week *775 earlier that “the funds paid will not be treated as a loan to the Debtor.” J.A. at 185. M&G explained that it had been previously unable to determine whether the First Retainer Payment would be treated as a loan or a capital contribution because McCrary and his lawyers were not forthcoming with this information. M&G also admitted that the Retention Order did not fully reflect the bankruptcy court’s oral ruling made at the August 11, 1998 hearing because it failed to specify whether the First Retainer Payment would be treated as a loan or a capital contribution. Finally, M&G requested that the issue of disgorgement be addressed after the court considered the Fee Application.
On February 29, 2000, the bankruptcy court held a hearing on the Second Motion at which the parties stipulated that the monthly operating reports reflected payments totaling $24,366.45 made by the Debtor to M&G. Accordingly, as of the date the Fee Application was filed, February 25, 2000, M&G had received postpetition payments totaling $44,366.45. This sum included $24,366.45 from the Debtor and $20,000 from McCrary (collectively, the “Postpetition Payments”).[4]
At this hearing, the Trustee argued that M&G’s employment had not been approved because M&G failed to comply with the conditions precedent to entry of the Retention Order as the source and treatment of the First Retainer Payment were never disclosed to the Trustee. According to the Trustee, questions persisted about how the First Retainer Payment would be treated well beyond the August 11, 1998 hearing. Finally, the Trustee noted that, in addition to the First Retainer Payment, the Second Retainer Payment had been made but not disclosed until M&G filed the Fee Application. In response, Gonzales explained that he did not intentionally omit from the Retention Order the source of the First Retainer Payment.
On March 3, 2000, the bankruptcy court issued a memorandum and order denying the Trustee’s First and Second Motions. The court reserved judgment on whether fees should be disgorged pending consideration of the Fee Application. The court also made several findings of fact. With respect to M&G’s failure to include the source and treatment of the First Retainer Payment in the Retention Order, the court found that:
Mr. Gonzales contritely admitted that he misunderstood the directive of the court. He did submit the employment order, and did orally inform the United States Trustee that Eddie McCrary had funded the retainer, but did not put that information in the order. Gonzales mistakenly believed that he need only disclose this information to the United States Trustee by the end of the week, but that the information did not need to appear in the order.
J.A. at 127-28. Further, the bankruptcy court found Gonzales “sincere” and deemed the error “excusable.” J.A. at 128.
*776 With respect to the issue of disclosure of the source and treatment of the First Retainer Payment, the bankruptcy court found that the First Motion, the October 25 Letter, and the Second Motion had been submitted by the Trustee in diligent pursuit of the undisclosed information. In particular, the bankruptcy court noted that after August 17, 1998, although the source of the First Retainer Payment was known, whether that payment would be treated as a loan by, or a capital contribution from, McCrary to the Debtor remained unresolved. The bankruptcy court blamed the failure to resolve this disclosure issue in part on its own failure to schedule a hearing on the First Motion. The bankruptcy court further found that “[s]ometime just prior to the hearing, it was ultimately conveyed to the [Trustee] that Mr. McCrary had provided the $10,000.00 payment with the hope, but without the expectation of repayment.” J.A. at 129.
Based on these findings of fact, the bankruptcy court ruled as follows:
There was no attempt to avoid the inquiries of the United States Trustee, and no deliberate effort on the part of Mendes & Gonzales to disobey the orders of this court. While the court understands and appreciates the efforts of the United States Trustee to protect the integrity of the process, the court cannot find that setting aside the employment order in this case would serve that end.

Id.

Following an April 18, 2000 hearing on the Fee Application, the bankruptcy court issued a memorandum and order on April 27, 2000 (the “Fee Order”) addressing the issue of disgorgement of fees paid to M&G for failure to disclose in a timely fashion the nature and source of M&G’s fee arrangement and for receiving the Postpetition Payments without prior court approval. The bankruptcy court held that M&G had committed technical violations of Code § 329 and Rule 2016 by failing to disclose promptly and fully the First Retainer Payment. For this technical violation of the Code and Rules, the court required M&G to disgorge $500 of the fees it had been paid. J.A. at 161. The bankruptcy court also found that M&G had committed more than mere technical, but less than flagrant or reckless, violations of §§ 330 and 331 of the Code by receiving the Postpetition Payments without obtaining prior court approval. As a sanction for this misconduct, the bankruptcy court ordered disgorgement of $3,989, or ten percent of the sum of $39,989.25, the amount that the bankruptcy court concluded had been received by M&G without prior court approval. The bankruptcy court allowed the Fee Application in full, subject to disgorgement of the $4,489.
On May 8, 2000, the Trustee appealed the Fee Order to the United States District Court for the Middle District of Tennessee. Specifically, the Trustee appealed the bankruptcy court’s order of disgorgement, but not its approval of the Fee Application. Three issues were presented to the district court: (1) whether the bankruptcy court erred in failing to properly sanction M&G for the failure to disclose the nature and source of the First Retainer Payment; (2) whether the bankruptcy court erred in failing to properly sanction M&G for accepting the Postpetition Payments without prior court approval; and (3) whether the bankruptcy court erred in failing to properly sanction M&G for its failure to disclose the extent of its conflicts of interest.
On January 10, 2001, the district court issued a memorandum opinion affirming the Fee Order in part and reversing it in part. See Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC), 263 B.R. 574 (M.D.Tenn.2001). First, with respect to M&G’s failure to *777 fully disclose the source and nature of the First Retainer Payment, the district court affirmed the $500 sanction ordered by the bankruptcy court stating that it could not find, “given the history of the case, [that the bankruptcy court] relied on clearly erroneous findings of fact or used an erroneous legal standard.” Id. at 586. This decision has not been appealed. Second, with respect to M&G’s receipt of the Post-petition Payments, the district court found that the bankruptcy court’s factual findings regarding M&G’s experience, credibility, and sincerity were clearly erroneous. Id. at 583. The district court determined that M&G acted willfully and, therefore, that the bankruptcy court had abused its discretion in failing to require full disgorgement. Id. at 584. Third, the district court found that although the bankruptcy court addressed the fact that M&G had received the Second Retainer Payment, the bankruptcy court had not given proper consideration to whether M&G should be sanctioned for failing to properly disclose the receipt of this payment. Id. at 586-87. Concluding that M&G’s failure to disclose the Second Retainer Payment was in willful disregard of its fiduciary obligations, the district court held that the bankruptcy court had abused its discretion by not ordering full disgorgement of the fees M&G received. Id. Ultimately, the district court denied the Fee Application and ordered complete disgorgement of all fees received by M&G.
M&G now appeals the district court’s decision to sanction the firm with full disgorgement and complete denial of fees based on its findings that M&G willfully violated the Code and Rules by: (1) accepting the Postpetition Payments, and (2) failing to disclose the Second Retainer Payment.
II. ANALYSIS
“Whether an appeal comes to our court by way of a district court or the [Bankruptcy Appellate Panel], our review is of the bankruptcy court’s decision.” Corzin v. Fordu (In re Fordu), 201 F.3d 693, 696 n. 1 (6th Cir.1999); see Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l Inc.), 132 F.3d 104, 107 (1st Cir.1997) (“Since this is exactly the same regimen that the intermediate appellate tribunal must use, we exhibit no particular deference to the conclusions of that tribunal (be it the district court or the BAP).”). Thus, this Court conducts an independent review of the bankruptcy court’s decision. See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 880 (9th Cir.1995), cert. denied, 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). The bankruptcy court’s decision to award fees is reviewed for abuse of discretion. Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 478 (6th Cir.1996). We review de novo the bankruptcy court’s conclusions of law. Fordu, 201 F.3d at 696 n. 1. Factual findings are reviewed for clear error. Id.
“A finding of fact is ‘clearly erroneous’ when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed.” Simon v. Chase Manhattan Bank (In re Zaptocky), 250 F.3d 1020, 1027 (6th Cir.2001); see Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988); see also United States v. Perry, 908 F.2d 56, 58 (6th Cir.1990) (explaining that to be clearly erroneous, a “ ‘decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old unrefrigerated dead fish’ ”), (quoting Parts and Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988), cert. denied, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989)). Under this standard, a reviewing court may not reverse a trial court’s findings of fact “merely because [the reviewing court] would have reached a different conclu *778 sion....” See Duddy v. Kitchen & Bath Distribs., Inc. (In re H.J. Scheirich Co.), 982 F.2d 945, 949 (6th Cir.1998).
This Court has clearly enunciated that findings of fact of a bankruptcy court should not be disturbed by the district judge unless there is the ‘“most cogent evidence of mistake or miscarriage of justice.’ ” Id.; accord Hardin v. Caldwell (In re Caldwell), 851 F.2d 852, 857 (6th Cir. 1988); Newton v. Johnson (In re Edward M. Johnson & Assocs., Inc.), 845 F.2d 1395, 1401 (6th Cir.1988). “Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” Caldwell, 851 F.2d at 857; see Fed. R. Bankr. P. 8013.
It is undisputed that a sanction is warranted in this case. The issue presented on appeal is whether the bankruptcy court abused its discretion as to the sanction that it issued. Initially, however, we must determine whether the bankruptcy court’s conclusion that M&G’s failures to comply with the Code and Rules were mere “technical” violations as opposed to willful, intentional acts manifesting a “callous” disregard for the Code and Rules, is clearly in error or constitutes a miscarriage of justice. See Downs, 103 F.3d at 479. As explained below, we are unable to determine on the present record whether the bankruptcy court abused its discretion and thus must remand this case for additional factual findings by the bankruptcy court.
A. Receipt of the Unauthorized Postpetition Payments
Section 330 of the Code requires that a professional person who seeks an award of compensation for services and expenses must obtain prior court approval, after notice to parties in interest and the Trustee, and a hearing.[5] See 11 U.S.C. § 330; In re Rivers, 167 B.R. 288, 304 (Bankr.N.D.Ga.1994). Rule 2016(a) provides that, in applying for compensation for services or reimbursement for expenses under § 330, a professional shall “file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.” Fed. R. Bankr. P.2016(a). The application must include: (a) a statement of what payments have been made or promised to the applicant for services rendered or to be rendered; (b) the source of the compensation; and (c) the details of any arrangement to share the compensation. Id. Section 331 of the Code permits a professional person to apply to the bankruptcy court for the allowance of interim compensation:
[N]ot more than once every 120 days after an order for relief in a [bankruptcy] case ..., or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of [the Code]. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.
11 U.S.C. § 331. The concept of allowing interim compensation evolved as judicially created law “based, in part, on the premise that professionals should not be expected to finance the administration of [bankrupt *779 cy] cases.” Lawrence P. King et al., Collier on Bankruptcy, 331-26, ¶ 331.LH.[1] (15th ed.2002).
The compensation scheme established by Code §§ 330 and 331 generally prohibits a professional from receiving payment of fees from a bankruptcy estate until an order of the bankruptcy court approving either a final award, or an interim allowance of fees, has been entered. See 11 U.S.C. §§ 330, 331; Rivers, 167 B.R. at 304 (“It is elementary that a professional may not solicit or accept compensation from a fiduciary without prior court approval and that compensation may be awarded only after notice to parties in interest and a hearing.”). It is undisputed that M&G received the Postpetition Payments without prior court approval and without first filing an application for an allowance of interim compensation.
A bankruptcy court confronted with a professional’s violation of the Code and/or Rules is afforded a “great deal of latitude in fashioning an appropriate sanction.” Downs, 103 F.3d at 478. Noncompliance with the provisions of the Code and Rules that govern the employment and compensation of professionals can range from inadvertent, technical violations, which may call for the imposition of no sanction whatsoever, to intentional violations, which may warrant complete disgorgement of fees. Caselaw establishes that the benchmark for determining the severity of the sanction to be imposed is willfulness. Thus, in Downs we stated that “the bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully.” 103 F.3d at 479. Applying the willfulness standard in Downs, we affirmed the judgment of the district court, which ordered complete disgorgement of fees and was based on a finding that debtor’s counsel had demonstrated a “callous disregard” for the duties imposed by the Code and Rules by “affirmatively ... concealing] his fee arrangement.” Id. at 479-80; see also Futuronics v. Arutt (In re Futuronics Corp.), 655 F.2d 463, 466-68, 471 (2d Cir.1981) (requiring complete denial of all compensation and disgorgement of all fees received for flagrant violation of fiduciary obligations exhibiting a callous disregard for attorney’s professional obligations), cert. denied, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); accord In re Arlan’s Dep’t Stores, Inc., 615 F.2d 925, 943 (2d Cir.1979) (affirming denial of all fees and order of total disgorgement where the total pattern of conduct “betray[ed] a callous disregard of ... professional obligations”).
Precedent also makes clear that non-willful violations of the Code and Rules generally do not call for imposition of the harsh sanction of complete disgorgement of fees. See In re LTV Steel Co., Inc., 288 B.R. 775, 779 (Bankr.N.D.Ohio 2002) (“[D]isgorgement is a harsh remedy that should only be applied in extreme situations.”); In re Anderson, 253 B.R. 14, 22 (Bankr.E.D.Mich.2000) (concluding that a non-willful failure to comply with the disclosure requirements imposed by Rule 2016 “would [not] by itself justify denial of fees under Downs”). We do not suggest, however, that a finding of willfulness must in all instances precede an order requiring complete disgorgement of fees. In fact, in Henderson v. Kisseberth (In re Kisseberth), 273 F.3d 714, 721 (6th Cir.2001), we noted, that “[d]isgorgement may be proper even though the failure to [comply with the Code and Rules] resulted ... from negligence or inadvertence.” Other courts have so concluded. See Park-Helena Corp., 63 F.3d at 882 (“Even a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 state *780 ment] may result in a denial of all requested fees.”). But, while a bankruptcy court does not abuse its discretion if it denies all compensation where, through mere negligence, an attorney fails to satisfy the requirements of the Code and Rules, see Kisseberth, 273 F.3d at 721, this Court has held that a “technical breach” of the Code and Rules generally warrants a sanction far more lenient than full disgorgement and denial of all compensation. Downs, 103 F.3d at 478, 480 (noting that sanctions must be meted out “with restraint and discretion” and that it is the bankruptcy court’s “duty to fashion a sanction that is not unduly burdensome.”).
Applying the standard articulated in Downs, the bankruptcy court found that “it is not disputed that M&G received funds from the retainers and from the estate prior to receiving court approval,” J.A. at 161, and concluded that this constituted “more than a technical violation” of Code §§ 330, 331. The court went on to find that M & G’s conduct did not warrant full disgorgement of fees because the firm’s “contrite, sincere admission of their mistakes, evidence[d] [its] lack of intent to disregard or disrespect the law.” Id. at 163. The bankruptcy court also noted that “[t]hese practitioners, although not inexperienced, are relatively new to bankruptcy.” Id. Concluding that M&G’s violation of the Code was “more than ... technical,” but less than “reckless or flagrant,” id. at 162, the bankruptcy court ordered disgorgement of $3,989 of the nearly forty thousand dollars received by M&G without prior court approval.
In determining whether to order partial or complete disgorgement of fees as the sanction for M&G’s unauthorized receipt of the Postpetition Payments, the bankruptcy court properly focused on the issue of whether the firm willfully violated §§ 330 and 331 of the Code. But, in our view, the court placed undue emphasis on the fact that Gonzales displayed contrition and made a sincere apology after M&G’s Code violations were called to the court’s attention by the Trustee. After-the-fact apologies and expressions of contrition have little or no bearing on the question of willfulness. Rather, the critical issue is whether M&G acted in willful disregard of the requirements imposed by Code §§ 330 and 331 at the time it accepted the Postpetition Payments. As we explain below, on this point the bankruptcy court’s findings are incomplete. Accordingly, we must remand the case to the bankruptcy court for further development of the record.
Before the bankruptcy court, the Trustee argued that M&G’s violation of Code §§ 330 and 331 must be viewed as willful because it placed the firm on notice that its acceptance of the Postpetition Payments was improper through three communications. According to the Trustee, the three warning shots fired across M&G’s bow were:
(1) The October 25, 1999 letter from the Trustee to M&G, which stated: “The monthly operating report filed by [the Debtor] for the month ending August 1999 lists payments to you for legal services in the total amount of $5,960.62. Please advise of the basis for the payment as I do not believe your employment has been approved by the court.” J.A. at 80;
(2) The Disclosure Statement Objection, which was filed by the Trustee on December 15,1999 and asserted that the Disclosure Statement should not be approved because, among other reasons, “[t]he debtor in possession has not included a statement regarding the unauthorized post-petition payments to Mendes & Gonzales and what action if any, it plans to take to recover these funds.” J.A. at 72; and
*781 (3) The Second Motion, which was filed on January 26, 2000 and stated that “[n]o fee application has been filed which would show the disposition of the $10,000.00 retainer received by [M&G]; nor has a fee application been filed which would support the payment of $10,859.64 from property of the estate.” J.A. at 78.
Thus, the Trustee argues that M&G received direct notice of its Code violations on these three separate occasions, yet continued to accept Postpetition Payments, thereby demonstrating a willful disregard for the strictures imposed by §§ 330 and 331 of the Code.
M&G contends that the firm was not aware of the Trustee’s objection to its receipt of the Postpetition Payments until the February 29, 2000 hearing on the Second Motion. Gonzales also pointed out that it was M&G’s standard practice to include language in the firm’s employment applications that authorized monthly payments subject to periodic bankruptcy court review. M&G inadvertently failed to include such a provision in the Employment Application.
The bankruptcy court determined that neither the October 25 Letter nor the Disclosure Statement Objection put M&G on notice that the Trustee considered its receipt of the Postpetition Payments to be improper. The bankruptcy court reasoned that, until the Disclosure Statement Objection was filed, “there is no evidence that M&G was even aware of the deficiencies of their fee arrangement or that there was any question of violation of the Code or Rules on this issue.” J.A. at 162. The court further found that “M&G understood the [Disclosure Statement Objection] to mean the retainer in question, not attorney fees paid by the [D]ebtor.” Id. at 163. Essentially, the bankruptcy court concluded that M&G interpreted both the October 25 Letter and the Disclosure Statement Objection to be merely renewed objections by the Trustee to the Retention Order, rather than a separate objection by the Trustee to M&G’s unauthorized receipt of the Postpetition Payments.
We cannot say that the bankruptcy court’s findings of fact with respect to the October 25 Letter and the Disclosure Statement Objection were clearly erroneous. The October 25 Letter appears to address an issue, previously raised by the Trustee, relating to whether the Employment Application was ever actually approved by the bankruptcy court given that the Retention Order did not comply with the conditions precedent ordered at the August 11, 1998 hearing. Although the October 25 Letter makes reference to $5960.62 received by M&G as of August 1999, it cannot fairly be characterized as an objection by the Trustee to M&G’s receipt of periodic payments pending the filing and approval of a fee application. And while the Disclosure Statement Objection refers to “unauthorized post-petition payments,” J.A. at 72, it also could have been reasonably interpreted by M&G as simply a continuing objection by the Trustee to the firm’s initial retention.
The bankruptcy court’s factual findings relative to the October 25 Letter and the Disclosure Statement Objection were based in large measure on its assessment of the credibility of those members of M&G who came before the court. The court noted that it “has become extremely familiar with the issues, parties, and complexities of this particular case due to the contested nature of many of the issues. The court has had ample opportunity to observe the professionals and the credibility of the witnesses in several different contested hearings.” J.A. at 160. Since the bankruptcy court’s findings concerning M&G’s interpretation of the October 25 Letter and the Disclosure Statement Ob *782 jection rested on its assessment of the demeanor and credibility of Gonzales and any other members of M&G who came before the court, these findings must be accorded significant deference. Fed. R. Bankr. P. 8013; Caldwell, 851 F.2d at 856.
However, remand is necessary because the current record is insufficient for this Court to address whether M&G’s violation of §§ 330 and 331 remained inadvertent, rather than willful, after the filing of the Second Motion. The Second Motion expressly stated that “[n]o fee application has been filed which would show the disposition of the $10,000.00 retainer received by [M&G]; nor has afee application been filed which would support the payment of $10,859.6k from property of the estate.” J.A. at 78 (emphasis added). M&G argued that even this explicit statement did not put the firm on notice that the Trustee objected to its receipt of the Postpetition Payments and considered this conduct to be violative of §§ 330 and 331 of the Code. According to M&G, notwithstanding the Trustee’s filing of the Second Motion, it remained “unaware or misunderstood any objections raised by the [Trustee] about the post-petition payments until the February 29, 2000 hearing on the [Second Motion].” J.A. at 163.
No finding was made by the bankruptcy court as to whether M&G was put on notice by the Second Motion that its receipt of the Postpetition Payments was in violation of the Code. The Fee Order does not involve any specific factual finding on this issue. The bankruptcy court recited M&G’s assertion that it misinterpreted the Trustee’s “objections” until the February 29, 2000 hearing on the Second Motion, and accepted M&G’s apologies for any mistakes it made. However, M&G accepted additional Postpetition Payments of $12,590.81 after the Second Motion was filed.
If M&G interpreted the Second Motion as nothing more than a continuing objection to the firm’s initial retention, rather than a challenge to its unauthorized receipt of the Postpetition Payments, then the sanction imposed may well have been appropriate. If, on the other hand, the Second Motion put M&G on notice that it violated the Code when it received the received the Postpetition Payments without court authority, then by continuing to accept payments from the Debtor thereafter, the film likely committed a willful violation of the Code and a more severe sanction should have been imposed.
On remand, the bankruptcy court should make a specific finding on whether the Second Motion put M&G on notice that it was acting in violation of Code §§ 330 and 331 after hearing testimony from Gonzales and any other member of M&G having personal knowledge of the relevant facts. The Trustee should be afforded the opportunity to call witnesses to support its position and to fully and completely cross-examine any witness offered by M&G. Of course, on remand the bankruptcy court is free to accept or reject any testimony offered by M&G regarding the firm’s interpretation of the Second Motion. But the court also should give due consideration to the language of the Second Motion.
At least two other matters should be explored by the bankruptcy court on remand. The first relates to M&G’s Employment Application and the Retention Order. The Fee Order stated:
M&G explained that it has been their standard practice to put into employment applications that subsequent post-petition payments would be paid with the understanding that such payments are “subject to court approval.” Hindsight in this case reveals, according to M&G that it was a mistake to not include some sort of provision for payment *783 of post-petition payments subject to court approval in this particular fee application.
J.A. at 162. The court stopped short of finding that Gonzales held the mistaken belief that the Employment Application contained language allowing the monthly payment of M&G’s fees. Clearly, if Gonzales was operating under the honest but mistaken assumption that the Employment Application included a provision authorizing monthly fee payments, then this would tend to explain how the firm could remain unenlightened as to its Code violations despite the Trustee’s filings and communications. Moreover, if Gonzales made this faulty assumption, this fact would support the bankruptcy court’s conclusion that M&G did not act in willful disregard of its obligations under the Code. Absent such a subjective belief by Gonzales, the fact that the firm deviated from its standard practice in this case is of no real significance. In any event, on remand the bankruptcy court should make a finding on this issue.
On remand, the bankruptcy court also should address its prevailing practice concerning the monthly payment of attorney fees by Chapter 11 debtors at the time the Employment Application was filed. On appeal, Gonzales explained that it was his normal practice, as well as the normal and accepted practice of others practicing bankruptcy law in the Middle District of Tennessee, to draft employment applications that called for the debtor’s monthly payment of fees, subject to disgorgement if the bankruptcy court ultimately did not approve the fees paid on an interim basis. Gonzales represented that he mistakenly neglected to include this provision in the Employment Application. Gonzales further represented that M&G no longer follows this practice of “drawing down” on fees before the bankruptcy court actually makes an award under § 330. At oral argument, the parties to this case acknowledged that this practice, although apparently commonplace in many bankruptcy courts, is no longer permitted in the bankruptcy court for the Middle District of Tennessee. On remand, the court should address whether this practice of allowing the monthly draw-down of fees actually was commonplace in that court and, if so, when it was abrogated. If a common practice allowing monthly payment of professional fees prevailed at the time M&G filed the Employment Application, and was changed during or after the time relevant to this case, this might provide an explanation for M&G’s violation of Code §§ 330 and 331 and certainly would bear on the question of willfulness.
In short, M&G’s continued acceptance of Postpetition Payments after the filing of the Second Motion may evidence willful misconduct or merely one in a series of violations of the Code and Rules that, while undeniably exhibiting a pattern of sloppy practice, does not necessarily establish a willful disregard for the firm’s statutory obligations. Again, violations of the provisions governing the retention and compensation of professionals range across a spectrum from the technical, inadvertent variety to intentional flouting of the Code and Rules. We vacate the judgment of the bankruptcy court on the issue of the appropriate sanction for the receipt of the Postpetition Payments and remand this case to the bankruptcy court with instructions that it make the factual findings necessary to determine where on this spectrum M&G’s violations should be placed.
B. Failure to Timely Disclose the Second Retainer Payment
It is undisputed that M&G failed to disclose the receipt of the Second Retainer Payment from McCrary until it filed the Fee Application. Although it is not clear precisely when this payment was received by M&G, it was definitely received prior to *784 January 31, 2000, and not disclosed until February 25, 2000. Therefore, it was not disclosed within 15 days of receipt as required by Rule 2016(b).[6]
Under § 329 of the Code, “an attorney must disclose any fee arrangements made within or after a year of the filing of the [bankruptcy] petition.” Id. at 477. Section 329 provides, in pertinent part:
(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
11 U.S.C. § 329.
Section 329 is implemented, in part, by Rule 2016(b), which states, in pertinent part:
Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code ... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.
Fed. R. Bankr. P.2016(b); see also Downs, 103 F.3d at 476-77. Section 329 of the Code and Rule 2016(b) are “fundamentally rooted in the fiduciary relationship between attorneys and courts.” Id. at 480.
The district court concluded that the bankruptcy court failed to adequately address the issue of whether M&G should be sanctioned for failing to disclose that it had received the Second Retainer Payment. We agree. Although the bankruptcy court acknowledged, when it recounted the stipulated facts, that M&G had received $20,000.00 from McCrary, the court does not appear to have considered whether the failure to disclose the Second Retainer Payment violated § 329 and Rule 2016(b). In its Fee Order, the bankruptcy court discussed the Second Retainer Payment in the context of M&G’s failure to obtain prior approval for its receipt of the Postpetition Payments. The court did not, however, address the issue of M&G’s failure to disclose the Second Retainer Payment and whether this omission constituted a willful violation of § 329 and Rule 2016(b) warranting the imposition of sanctions.
Although the bankruptcy court had not addressed the merits of this issue, the district court concluded that M&G had willfully failed to disclose the Second Retainer Payment based on the following findings. First, the Trustee “had been objecting to payments from Eddie McCrary since August 1998, based on his position as the largest unsecured creditor of the Debtor. The Trustee has repeated *785 ly objected to the employment of [M&G] on the basis of the receipt of a payment from McCrary.” Vergos, 263 B.R. at 587. Second, the district court distinguished the Second Retainer Payment from the payments disclosed in the Debtor’s monthly operating reports finding that this payment was “not disclosed in any fashion prior to the submission of the [f]ee [application.” Id. Third, the district court found that, unlike the case with the First Retainer Payment, no failing or omission by the bankruptcy court mitigated M&G’s failure to disclose the Second Retainer Payment. Fourth, the district court found that, “given Mr. Gonzales’s experience both in bankruptcy law in general and within this case,” he had to be aware of McCrary’s status as the largest unsecured creditor at the time he received the Second Retainer Payment. Id. at 587-88. Concluding that the bankruptcy court erred in not finding that M&G willfully violated Code § 329 and Rule 2016 by failing to disclose the Second Retainer Payment, the district court ordered complete disgorgement of all payments received and ordered the disallowance of all fees sought by M&G by way of the Fee Application as a sanction. Id. at 588.
Although the Second Retainer Payment was not properly disclosed, an analysis of the merits of this issue is dependent upon factual determinations that this Court is unable to make. Accordingly, we remand this matter to the bankruptcy court to make the necessary factual determinations, including whether M&G acted willfully or inadvertently when it failed to disclose that it had received the Second Retainer Payment, and to assess the appropriate sanction for this conduct.
C. Sanction
On remand, the bankruptcy court must determine: (1) whether M&G’s continued acceptance of Postpetition Payments after its receipt of the Second Motion constitutes a willful violation of Code §§ 330 and 331; and (2) whether M&G willfully violated Code § 329 and Rule 2016 by failing to disclose the Second Retainer Payment. Based on the ultimate factual findings that the court makes with respect to these matters, a sanction more robust than that already imposed by the bankruptcy court may well be in order. But the decision as to the severity of the sanction to be imposed remains within the sound discretion of the bankruptcy court. See Downs, 103 F.3d at 478 (“[T]he bankruptcy court is given a great deal of latitude in fashioning an appropriate sanction----”).
In both Downs and Kisseberth, we affirmed bankruptcy court orders requiring full disgorgement of fees, finding that the imposition of such sanctions did not constitute an abuse of discretion under the circumstances of those cases. But bankruptcy courts should not read this precedent to always require full disgorgement.[7] See, e.g., In re Metropolitan Envtl., Inc., 293 B.R. 871, 889-91 (Bankr.N.D.Ohio 2003) (holding that attorneys’ willful disregard of disclosure obligations by failure to disclose fee guaranty warranted partial, rather than full, disgorgement of fees and noting that Downs “does not necessarily mandate that under circumstances involving a willful disregard of fiduciary duties, must an attorney be required to disgorge his or her entire fees”). For example, in Metropolitan Environmental, the bankruptcy court ordered partial disgorgement because the violation of the Code and Rules by debtor’s attorneys “did not arise until after the *786 [debtor’s] case had been pending for a significant period of time.” Id. at 890. Likewise here, if M&G’s violation of the Code and Rules is found on remand to have become willful only after it received the Second Motion, or after it failed to disclose the Second Retainer Payment, the bankruptcy court has the latitude to tailor a sanction that is appropriate under the unique circumstances presented in this case—such as disgorgement of all fees received after the point in time that M&G’s misconduct is shown to have become willful.
III. CONCLUSION
For the foregoing reasons, we VACATE the bankruptcy court’s judgment and REMAND this case to that court for further proceedings consistent with this opinion.

. Stanton & Mendes, PLLC became known as Mendes & Gonzales, PLLC shortly after the Employment Application was filed in this case. References in this opinion to M&G also include the firm’s predecessor, Stanton & Mendes, PLLC.

. A loan to the Debtor by McCrary would require bankruptcy court approval. See 11 U.S.C. § 364.

. The monthly operating reports for the months ending October 31, 1999 and November 30, 1999 disclosed that additional pay-merits of $4304.90 and $595.12, respectively, were made to M&G by the Debtor.

. The following payments from the Debtor to M&G were stipulated to: $5,960.62 on August 19, 1999; $4,304.90 on October 4, 1999; $916 on November 4, 1999; $594.12 on November 19, 1999; $2,500 on each of January 21, January 27, and February 4, 2000; $590.81 on February 4, 2000; and $2,500 on each of February 21 and February 25, 2000. The parties’ stipulation appears to contain an arithmetic error. The foregoing payments total $24,866.45 rather than the $24,366.45 figure contained in the stipulation. Further, although the parties stipulated that, as of February 29, 2000, $24,366.45 had been paid by the Debtor to M&G, the Fee Application states that, as of January 31, 2000, $19,775.64 had been paid by the Debtor to M&G. Payments made in February from the Debtor to M&G totaled $7,590.81. Thus, $3,000 appears to be unaccounted for.

. Section 327(a) of the Code, which authorizes a trustee or debtor-in-possession to employ professionals to assist in the administration of a bankruptcy case, provides:
Except as otherwise provided in this section, the trustee, with the court’s approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the state, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
11 U.S.C. § 327(a).

. This payment does not appear to have been disclosed in the Employment Application in violation of Rule 2014. Federal Rule of Bankruptcy Procedure 2014 requires that an application for employment of an attorney state: (a) the facts showing the necessity of the employment, (b) the name of the person to be employed, (c) the reasons for their selection, (d) the professional services to be rendered, (e) "any proposed arrangement for compensation,” and (f) "to the best of the applicant’s knowledge, all of the attorney's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the Trustee, or any person employed in the office of the Trustee." Fed. R. Bankr. P.2014 (emphasis added). Here, if the Second Retainer Payment was anticipated at the time the Employment Application was filed, Rule 2014 was violated.

. As our sister circuit has observed in a somewhat different context, "[n]ot every conceivable [violation of the Code and/or Rules] must result in sending counsel away to lick his wounds.” In re Martin, 817 F.2d 175, 183 (1st Cir.1987).