NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0577n.06

Case No. 18-3149

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Nov 19, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| In Re: GEORGE A. BAVELIS, | ) | |
|     Debtor. | ) | |
| | ) | |
| _____ | ) | ON APPEAL FROM THE UNITED |
| GARY GOLDSTEIN, *et al.*, | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
|     Appellants, | ) | OHIO |
| | ) | |
|      v. | ) | |
| | ) | |
| GEORGE BAVELIS, | ) | |
|     Appellee. | ) | |

---

BEFORE: SILER and KETHLEDGE, Circuit Judges; OLIVER*, District Judge.

SILER, Circuit Judge. Quick Capital, a company owned by Ted Doukas, held a promissory note signed by George Bavelis, a debtor in Chapter 11 bankruptcy. Quick Capital filed a proof of claim against Bavelis's bankruptcy estate, and then sold and assigned its claim to Socal, an unrelated entity. However, Doukas and his attorney, Gary Goldstein (together, "Doukas"), concealed the assignment from Bavelis and the bankruptcy court, and litigated the entire case as if Quick Capital was still the interested party. After Bavelis finally uncovered the deception, the

---

    * Hon. Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

bankruptcy court ordered Doukas and Goldstein to pay $257,228.31 in sanctions, which represented a portion of Bavelis's costs and attorney's fees.

The principal issue concerns the amount of the bankruptcy court's fee award. Doukas claims the bankruptcy court's sanctions were not limited to the costs and fees Bavelis incurred "but for" their bad conduct, as required by *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017). Because the bankruptcy court properly applied *Haeger*, we AFFIRM.

I.

This case involved extensive litigation regarding the Chapter 11 bankruptcy. The basic facts of Bavelis's bankruptcy were related in an earlier appeal, which will not be repeated herein. *In re Bavelis*, 773 F.3d 148, 151-55 (6th Cir. 2014). We affirmed the bankruptcy court's judgment. *Id.* at 161.

This appeal concerns the conduct of Doukas and his counsel during the proceedings outlined in our prior decision. The facts are undisputed and were summarized by the bankruptcy court below. *In re Bavelis*, 563 B.R. 672, 674 (Bankr. S.D. Ohio 2017).

To review: Bavelis issued a $14 million promissory note to Quick Capital, Doukas's company. When Bavelis went bankrupt, Doukas sought to collect. The bankruptcy court eventually determined that Doukas could not collect because he had fraudulently induced Bavelis to issue the note. During the course of litigation, however, Doukas and his counsel concealed the fact that Doukas had assigned Quick Capital's interest in the note to an entity Doukas did not own.

In April 2011, Doukas assigned Quick Capital's interest in the $14 million note to Socal in exchange for $1.8 million. *Id.* at 676-77. The assignment eliminated Quick Capital's interest as a creditor of Bavelis's bankruptcy estate. *Id.* at 677. Goldstein, Doukas's lawyer, learned of the assignment in May 2011 and agreed to represent Socal as assignee of the note. *Id.* The parties

agreed not to disclose the assignment in order to conceal the fact that Socal had purchased the note for $1.8 million. *Id.* at 677-78. Their goal "was to force a settlement or actually try the case someplace to secure the maximum amount of return of the $14,000,000 claim." *Id.* at 678 (internal quotation marks omitted). But "[t]he strategy . . . could not succeed if [they] revealed the Assignment to Bavelis or the Court." *Id.*

Doukas failed to mention the assignment in several discovery requests, even though the assignment was clearly responsive to the question asked or the documents requested. *Id.* at 678-80. They also "filed multiple documents [with the bankruptcy court] in which they failed to disclose the Assignment and even went so far as to make the false representation that Quick Capital was a creditor of the bankruptcy estate post-Assignment[.]" *Id.* at 680. Further, "Doukas . . . took several positions in th[e] case that ran directly counter to Socal's interests as a creditor[]"; "if [Doukas] had been truthful with Bavelis and the Court about the Assignment, Bavelis would not have been . . . required to respond to arguments that served only the interests of Doukas and Quick Capital." *Id.* at 683, 684. Finally, Doukas frustrated Bavelis's efforts to reach a settlement. *Id.* at 684. Although Quick Capital no longer owned the note, Doukas attended a settlement conference. *Id.* at 685. But "[t]he extent of the adversity between Doukas and Socal meant that the [c]laim [n]egotiations between Doukas and Bavelis had no chance of resolving the Claim." *Id.*

In July 2013, Bavelis's counsel uncovered the assignment during discovery in unrelated litigation. *Id.* at 686. Counsel brought the assignment to the bankruptcy court's attention during a status conference in August, but Goldstein falsely claimed that he had previously told Bavelis's counsel about the assignment. *Id.* Bavelis filed a motion to join Socal as a party defendant, which the court granted. *Id.*

The bankruptcy court imposed sanctions against Doukas and Goldstein. "Under § 105(a) of the Bankruptcy Code, a bankruptcy court may 'take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.'" *Id.* at 687 (quoting 11 U.S.C. § 105(a)) (cleaned up). The court found "by clear and convincing evidence" that Doukas and Goldstein "engaged in egregious, bad-faith conduct in multiple ways"; specifically, by "fil[ing] multiple documents with the Court stating that Quick Capital was a creditor when they knew that this contention was false" and "[b]y failing to produce the Assignment and stating that no responsive documents existed even though the Assignment was clearly responsive. . . ." *Id.* at 688. The court also found that it "ha[d] the authority to sanction Goldstein under 28 U.S.C. § 1927." *Id.* Pursuant to that statute, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct." *Id.* (quoting 28 U.S.C. § 1927). The court found that Goldstein "objectively fell far short of [his duty of candor to the court] each time he knowingly misrepresented Quick Capital's status as a creditor in documents filed with the Court." *Id.* at 689. Further, "failing to produce the Assignment and making misrepresentations to Bavelis about its existence in the responses to discovery . . . also constitute[d] unreasonable and vexatious litigation tactics . . . warrant[ing] the imposition of sanctions under § 1927." *Id.* (citation omitted).

The court rejected Doukas and Goldstein's argument "that they [could not] be held liable for withholding documents and lying during discovery because Bavelis did not seek discovery sanctions," finding that the "court's inherent authority to impose sanctions is not displaced by sanctions schemes available through statutes or court rules." *Id.* (citation omitted). The court found that the bankruptcy discovery rules are "inadequate to address a situation where . . . the party

being sanctioned not only failed to produce a document, but also made misrepresentations . . . designed to conceal its existence." *Id.* at 690. The court also rejected their argument that, because Goldstein represented Doukas, Quick Capital, and Socal, the failure to disclose the assignment had no real effect on Bavelis. *Id.* Under this theory, it did not matter whether the assignment was disclosed, because Bavelis would simply have litigated the same issues against Socal. But the court observed that "this would not justify lying to Bavelis and the Court. Moreover, . . . given their conflicting financial interests, it is highly unlikely that Socal would have conducted itself in the manner Quick Capital did." *Id.*

The bankruptcy court determined that "[a]n award of attorneys' fees and expenses jointly and severally payable by all of the Respondents is an appropriate sanction for their bad-faith litigation conduct." *Id.* at 697 (citation omitted). Further, under 28 U.S.C. § 1927, the court "separately order[ed] Goldstein to pay the excess costs, expenses, and attorneys' fees Bavelis reasonably incurred because of such conduct." *Id.*

Having established that sanctions were warranted, the court and the parties set out to determine the amount. The court ordered Bavelis to file a statement "establish[ing] that the fees and expenses Bavelis seeks to recover were: (1) incurred due to the bad faith misconduct described in this opinion; and (2) reasonable and necessary." *Id.* at 698. Bavelis did so in March 2017.

Bavelis sought a total of about $500,000: $409,000 for fees incurred by his "Special Litigation Counsel"; $87,000 for fees incurred by his main bankruptcy counsel; and $2,000 in expenses. He also sought fees and expenses associated with the fee statement and upcoming evidentiary hearing. Finally, Bavelis asked the court to "issue an award of minor, non-compensatory punitive damages," but conceded that the court did not have the authority to issue "an additional award of significant non-compensatory punitive damages."

Citing *Chambers v. NASCO, INC.*, 501 U.S. 32 (1991), Bavelis argued that "in cases where a party and/or counsel engages in extensive bad faith conduct, an award of all fees and expenses reasonably incurred by the innocent party in litigating therewith is appropriate, even absent proof of a direct causal connection between the specific bad faith conduct at issue and the fees/expenses incurred." He listed nine "categories of fees/expenses . . . related to Respondents' sanctionable misconduct":

(1) "Settlement conference/matters";

(2) "Quick Capital/Doukas Appeals";

(3) "Discovery efforts met with misstatements or concealment and/or follow up efforts related thereto";

(4) "Filings for which Quick Capital lacked standing as part of main bankruptcy case/related filings by others";

(5) "Unnecessary/inappropriate pre-April 2012 hearing filings/disclosures";

(6) "Identification and investigation concerning real party status and addressing the same";

(7) "Issues with respect to revocation of Attorney Goldstein's *pro hac vice* admission";

(8) "Efforts to obtain sanctions due to misconduct of Doukas Defendants and Attorney Goldstein"; and

(9) "Preparation for and participation in April 2012 claim objection hearing and post-hearing matters."

Bavelis described each category in a sentence or two, and listed the amount of fees and expenses attributable to each category. Attached to Bavelis's fee statements were invoices from Bavelis's law firms and spreadsheets summarizing the fees sought, each color-coded to match the specific category to which the particular line item was attributable. Doukas filed an objection to Bavelis's

fee statement, arguing that Bavelis had not limited his fee request to "only those fees and expenses incurred as a result of the specific misconduct."

Two days before a scheduled evidentiary hearing on the amount of the sanctions, the Supreme Court decided *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017). The Court held that "a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees . . . is limited to the fees the innocent party incurred solely because of the misconduct." *Id.* at 1183-84.

The bankruptcy court held a hearing on April 20, and issued an amended bench decision (the decision from which Doukas appeals). The court incorporated its earlier finding that Doukas engaged in sanctionable misconduct by failing to disclose and affirmatively concealing the Quick Capital assignment. Recognizing that the recent *Haeger* decision imposed a but-for causation standard, the court "conclude[d] that the fees Bavelis request[ed] in Categories 1, 3, 4 (with only limited exceptions) and 6-8 would not have been incurred but for [Doukas's] bad-faith litigation conduct." The court then discussed at length why those fees were recoverable, and why the fees Bavelis requested in Categories 2, 5, and 9 were not. In the end, the court awarded Bavelis $257,228.31 in fees—less than half of the $532,406.31 he requested.

After the bankruptcy court issued its final judgment, Doukas appealed to the district court, which affirmed the bankruptcy court's fee award.

## II.

"On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district court." *In re McKenzie*, 716 F.3d 404, 411 (6th Cir. 2013) (citation omitted). We apply the abuse of discretion standard, "review[ing] the [bankruptcy court's] legal conclusions de novo and any

factual findings for clear error." *Id.* (citations omitted); *see In re McCrary & Dunlap Const. Co.*, 79 F. App'x 770, 777 (6th Cir. 2003).

III.

Without addressing the contested issue of the record on appeal, we consider the matter of the fee award. All agree that *Haeger* supplies the decisional framework. There, the Court held that "a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees . . . is limited to the fees the innocent party incurred solely because of the misconduct." *Haeger*, 137 S. Ct. at 1183-84. In other words, "[t]he complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). The Court left the district court considerable room to "exercise discretion and judgment." *Id.*

That is precisely the approach employed by the bankruptcy court here. The court explicitly quoted and extensively applied the "but-for" causation test from *Haeger*. It did not, as Doukas suggests, simply "mention[] the . . . *Haeger* decision [and] fail[] to properly apply it."

As noted above, Bavelis sought fees in nine delineated categories. The bankruptcy court individually assessed each category, ultimately concluding "that the fees Bavelis request[ed] in Categories 1, 3, 4 (with only limited exceptions) and 6-8 would not have been incurred but for the [Appellants'] bad-faith litigation conduct." The court explained at length why the evidence of record either did or did not support a finding of but-for causation in each category.

Doukas lodges specific objections to each of the six awarded categories of costs and fees. They are addressed in turn.

First, as to Category 1, Doukas claims Bavelis would have participated in a settlement conference anyway, because Doukas and Bavelis had other dealings at issue in the bankruptcy

proceedings aside from the Quick Capital promissory note. But the bankruptcy court correctly observed that "[i]f Doukas had disclosed the Assignment, it would have been apparent to Bavelis that Doukas had nothing left to trade." Further, in the absence of full disclosure, it was impossible for Bavelis to reach a global settlement with Doukas because Socal, the real party-in-interest, was not involved in the negotiations.

Second, as to Category 3, Doukas concedes that but-for causation exists in this category, which is related to discovery efforts. Still, he claims that the bankruptcy court erred by awarding sanctions in this category pursuant to its inherent power, when Federal Rule of Civil Procedure 37 provides an avenue for awarding discovery sanctions. This argument is belied by *Haeger*, where the Supreme Court did not question the district court's authority to award sanctions under its inherent power, even though the defendant's misconduct was related to discovery. *See* 137 S. Ct. at 1184.

Third, as to Category 4, Doukas argues there is no way to prove Socal, the party with actual standing to participate in the litigation, would not have made the same filings as did Quick Capital. The bankruptcy court rejected this argument, finding "absolutely no evidence in the record establishing that Socal would have filed [the same documents as Quick Capital] if the Assignment had been disclosed. In fact, the evidence is to the contrary . . . ."

Fourth, as to Category 6, Doukas asserts Bankruptcy Rule 3001(e) places the onus on Socal to disclose the assignment; because Socal failed in this regard, Doukas says, the costs Bavelis incurred while attempting to discover Socal's identity are not attributable to Doukas. Doukas does not appear to have raised this argument below and admits he coordinated with Socal to hide the disclosure.

Fifth, as to Category 7, after the deception was discovered, the bankruptcy court ordered Goldstein to show cause why his *pro hac vice* admission should not be revoked. Bavelis supported the revocation of Goldstein's *pro hac vice* admission and submitted filings to that effect. The bankruptcy court correctly recognized that, because "the facts that gave rise to the revocation of Goldstein's admission *pro hac vice* also form the basis for the imposition of monetary sanctions against the [Appellants]," and "in light of Goldstein's involvement in the concealment of the Assignment, it was reasonable for Bavelis's attorneys to take a position on the revocation issue."

Finally, as to Category 8, Doukas contends Bavelis is not entitled to recover costs and fees associated with his efforts to obtain sanctions, calling "[t]his part of the fee award [] patently excessive and, frankly, ridiculous." But the district court observed that Doukas, "despite the indisputable egregious nature of their misconduct[,] fought at every turn not to be sanctioned. Of course, the fees Bavelis has incurred fighting this unnecessary battle would not have been incurred but for the [Appellants'] misconduct." As to the amount of fees in this category, nothing beyond Doukas's conjecture supports his allegation that these fees "carry[] a stench of time-padding."

Ultimately, this appeal boils down to Doukas's back-door attempt to relieve themselves of any responsibility for the misconduct in which they indisputably engaged. They do not directly challenge the bankruptcy court's determination that they engaged in sanctionable misconduct. The bankruptcy court, following a hearing and looking to an extensive factual record, rejected Doukas's characterization of events and concluded that their bad-faith conduct caused Bavelis to incur over $250,000 worth of unnecessary costs and fees. That "judgment[], in light of the [bankruptcy] court's superior understanding of the litigation, [is] entitled to substantial deference on appeal." *Haeger*, 137 S. Ct. at 1187 (citation and internal quotation marks omitted).

IV.

In the absence of any abuse of discretion by the district court, we AFFIRM.